661 A.2d 352

COMMONWEALTH of Pennsylvania, Appellee

v.

Michael J. TRAVAGLIA, Appellant.

Supreme Court of Pennsylvania.

Submitted July 8, 1994.

Decided June 23, 1995.

Reargument Denied Aug. 21, 1995.

114

Jerry S. McDevitt, Jeffrey T. Barbour, Pittsburgh, for M.J. Travaglia.

John J. Driscoll, Greensburg, John Peck, Arnold, for Com.

Robert A. Graci, Harrisburg, for Com./A.G.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.[1]

This is a direct appeal from the final orders of the Court of Common Pleas of Westmoreland County denying Appellant's motion for disqualification of the Honorable Gilfert Mihalich and denying Appellant's second petition for post-conviction relief.[2] For the reasons discussed below, we affirm the Orders of the trial court.

Appellant and his codefendant, John C. Lesko, were tried jointly for the murder of Apollo Police Officer Leonard Miller at a trial presided over by Judge Mihalich. The jury convicted both defendants of first degree murder and conspiracy to commit criminal homicide; both defendants were sentenced to death. This Court affirmed Appellant's conviction and judgment of sentence. *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied, Travaglia v. Pennsylvania*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984) (*"Travaglia I"*).

In 1985, Appellant filed a petition under the Post Conviction Hearing Act ("PCHA"). Relief was denied, and the Superior Court affirmed. *Commonwealth v. Travaglia*, 359 Pa.Super. 630, 515 A.2d 620 (1986). This Court denied allocatur. *Commonwealth v. Travaglia*, 518 Pa. 639, 542 A.2d 1368 (1987), *cert. denied, Travaglia v. Pennsylvania*, 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989) (*"Travaglia II"*).

On June 8, 1990, Governor Robert P. Casey signed a warrant for Appellant's execution. A stay was granted by the Honorable Alan M. Bloch of the United States District Court for the Western District of Pennsylvania on September 6, 1990, to allow Appellant to investigate and seek habeas corpus relief.

In May 1991, Appellant filed his second post conviction appeal, this time under the Post Conviction Relief Act

---

1. This case was reassigned to this author.

2. In a death penalty case, the denial of post-conviction relief is directly reviewable by this Court. 42 Pa.C.S. § 9546(d).

("PCRA").[3] Appellant also filed a motion for disqualification of Judge Mihalich. The motion for disqualification as well as the petition for post-conviction relief were denied. This appeal followed.[4]

To be eligible for post-conviction relief, an appellant must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the errors or defects listed in § 9543(a)(2)[5], and that the issues he raises have not been previously litigated. An issue has been previously litigated if the highest appellate court in which an appellant could have had review has ruled on the merits of the issue, or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa.C.S. § 9544. If the allegations of error have not been finally litigated, the PCRA also requires that an appellant demonstrate that these allegations of error have not been waived or that, if waived, the conditions in either § 9543(a)(3)(ii) or (iii) have been met.[6]

---

**3.** 42 Pa.C.S. § 9541 *et seq.*

**4.** Our standard of review in reviewing an order either granting or denying post-conviction relief is limited to examining whether the court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Lutz*, 492 Pa. 500, 506, 424 A.2d 1302, 1305 (1981).

**5.** Only three provisions of 42 Pa.C.S. § 9543(a)(2) could have any application to this appeal: Section 9543(a)(2)(i), (a)(2)(ii), and (a)(2)(v). The errors and defects listed in these sections refer to ineffective assistance of counsel and other violations of the United States or Pennsylvania constitutions.

**6.** Section 9543(a)(3) provides:

That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

We note, however, that it is this Court's practice to address all issues arising in a death penalty case, irrespective of a finding of waiver. *Commonwealth v. DeHart*, 539 Pa. 5, 650 A.2d 38 (1994).

118

 Appellant raises several claims of constitutional error, including a plethora of ineffective assistance of counsel claims. To establish an ineffective assistance of counsel claim, appellant must first demonstrate that the underlying claim is of arguable merit; then, that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate Appellant's interest; and, finally, that but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 230 (1994); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Appellant bears the burden of proving all three prongs of this standard. *Commonwealth v. Baker,* 531 Pa. 541, 562, 614 A.2d 663, 673 (1992). If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met. *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674 (1984).

Before we address Appellant's claims, we note that this is Appellant's second collateral attack. We have held that a "second or subsequent petition for post-conviction relief will not be entertained 'unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred.'" *Commonwealth v. Szuchon,* 534 Pa. 483, 487, 633 A.2d 1098, 1099 (1993) (citing *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988).) This standard is met if Appellant can "demonstrate either: (a) that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate; or (b) that he is innocent of the crimes charged." *Szuchon,* 534 Pa. at 487, 633 A.2d at 1100. Since Appellant does not assert that he is innocent, relief will be granted only if he can establish that the proceedings below "were so unfair that a miscarriage of justice occurred which no civilized society can tolerate." It is with awareness of this standard that we proceed to consider Appellant's claims.

Appellant alleges that there were errors at the guilt and sentencing phases of his trial, and that these errors (individually and cumulatively) made his trial "fundamentally unfair," such that he was denied due process in violation of the Fourteenth Amendment of the United States Constitution. *See Lisenba v. People of the State of California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289–90, 86 L.Ed. 166 (1941). Appellant also raises numerous claims of ineffectiveness of counsel, many of which are linked with his due process claims.

## I. Alleged Errors in the Guilt Phase of Travaglia I

### A. Issues Related to Evidence of the Nicholls Homicide

At the guilt phase of trial, Ricky Rutherford, a prosecution witness, testified as to criminal acts of Appellant and Lesko which were not included in the crimes charged at bar. These criminal acts centered on the abduction and eventual murder of William Nicholls, events which occurred a few days before Officer Miller was killed.[7] On direct appeal, we found that this evidence was properly admitted to show that the motive and intent of Appellant and Lesko to kill Officer Miller was to avoid detection of the Nicholls murder. *Travaglia I*, 502 Pa. at 492–494, 467 A.2d at 296–298. Appellant now raises several issues related to the admission of evidence of the Nicholls murder.

First, Appellant alleges that the Commonwealth misled him into believing that it would not introduce evidence concerning the Nicholls murder. Appellant alleges he was thus deprived of effective voir dire because he did not ask potential jurors whether they would be prejudiced by this information; Appellant also alleges that because he was misled, he was unfairly surprised by Rutherford's testimony. These issues are meritless.

To support his contention that the Commonwealth misled him, Appellant focuses on comments made by Lesko's attorney and the district attorney at a pre-trial conference held on

7. Appellant pled guilty to second degree murder in Indiana County in relation to the Nicholls homicide.

120

May 30, 1980. Appellant directs our attention to that portion of the record where Lesko's attorney stated that he had spoken "with the district attorney, shallowly, but it's apparently the position of the district attorney that each homicide [the Nicholls and Miller homicides] is to be the subject of a separate trial. There is no connection between—no legal connection between the various homicides." (Trans., May 30, 1980, at p. 28). The district attorney attempted to reply, but was interrupted by Appellant's counsel. The prosecutor then said:

> MR. GEARY (district attorney): Well, unfortunately, the murder of Mr. Nicholls is not being tried with this case. However, a police officer was shot in the line of duty, and we think the fact that the defendants were in a stolen car and were carrying identification papers from the individual who owned the car (Mr. Nicholls) is relevant to the issue of motive and intent.

Trans., May 30, 1980, p. 29. The trial court then interjected, stating that it would not address the issue of admissibility of this evidence at that time.

We do not agree that this interchange establishes, as Appellant contends, that the Commonwealth misled Appellant into believing that it did not intend to introduce evidence of the Nicholls murder. Rather, the Commonwealth plainly stated that it considered such evidence relevant to prove motive and intent. Furthermore, a review of the record makes it clear that the prosecutor did not attempt to mislead Appellant. Appellant's claims that he was denied effective voir dire and was unfairly surprised because the prosecutor misled him are thus meritless.

Appellant also raises related ineffective assistance of counsel claims. He alleges that his trial counsel, Dante Bertrani, was ineffective in failing to pursue on appeal these issues related to the Commonwealth misleading him. Since we have determined that the underlying issues are meritless, Appellant's related ineffective assistance of counsel claims also fail. Counsel cannot be deemed ineffective for failing to raise a

meritless claim. *Commonwealth v. Pursell,* 508 Pa. 212, 224, 495 A.2d 183, 189 (1985).

■ Appellant next argues that Rutherford's statement at trial that Lesko's and Appellant's actions in killing Nicholls seemed to him "like something they did all the time" (N.T., Vol. I, at p. 367) was prejudicial error. On direct appeal, this Court considered this statement and concluded that if it were error, it was harmless in view of the record and the trial court's immediate cautionary instructions. *Travaglia I,* 502 Pa. at 494, 467 A.2d at 298.

Appellant now tries to bootstrap this argument by stating that the prosecutor intentionally solicited this comment so that Appellant was denied due process. This claim has no merit. Mr. Rutherford's statement came as a response to the prosecutor's question as to *how* Appellant and Lesko were acting when they recounted the details of the Nicholls murder. Instead of relating what he saw, Rutherford gave his interpretation as to *why* Appellant and Lesko were acting the way they were. There is no evidence of record that the prosecutor intentionally solicited inadmissible testimony, and thus this claim fails. Appellant's related claim that counsel was ineffective for failing to pursue this issue on appeal also fails since Appellant has not shown that the underlying claim has any merit.

Third, Appellant alleges that counsel was ineffective for failing to raise other legal theories as to why Rutherford's testimony could not be admitted to prove motive and intent. Again, we note that this Court held on direct appeal that evidence of the Nicholls murder was properly admitted to prove motive and intent. *Travaglia I, supra.* Appellant now attempts to relitigate this previously determined issue under the cloak of an ineffectiveness of counsel claim; we have held that such an attempt to relitigate previously settled claims will not be tolerated. *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121, 123 (1994); *Commonwealth v. Wilson,* 452 Pa. 376, 378–379, 305 A.2d 9, 10–11 (1973). Thus, this claim of ineffectiveness fails.

122

*B. Issues Related to Lesko's and Appellant's Confessions*

██ Appellant raises several due process and ineffectiveness of counsel claims in relation to the admission of his confession and Lesko's confession.

First, Appellant objects to a portion of Lesko's confession where Lesko stated that they had sped by Officer Miller to draw Officer Miller's attention "[s]o he'd be chasing us, and that there, and the car was fast and that—we'd lose him and could go knock off the Stop–N–Go." N.T., Vol. I, at p. 617.[8] Appellant contends that this evidence of a robbery motive violated his Sixth Amendment rights as per *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In *Bruton*, the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when his non-testifying codefendant's confession implicates defendant as a coparticipant in the crime. *Bruton* was tempered by *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), where the Court held that the harmless error doctrine applies to *Bruton* violations. The *Schneble* harmless error doctrine states that where the evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, reversal is not required. *Id.; see also Commonwealth v. Williams*, 524 Pa. 404, 573 A.2d 536 (1990).

Assuming *arguendo* that this was error, it was certainly harmless. The jury had before it Appellant's confession as well as Rutherford's testimony as to the killing of Officer Miller. Any prejudice arising from the attribution of an alternate potential motive for the killing of Officer Miller was insignificant when compared to the overwhelming evidence of guilt.

Appellant also contends that counsel was ineffective for failing to pursue this *Bruton* issue on appeal. As per *Strickland, supra*, the prejudice prong of the ineffectiveness of

8. We note that the redacted confession admitted into evidence did not name Appellant; any references to Appellant, or Appellant and Lesko, were generic references to "he" or "we" respectively.

counsel test may, in the interest of judicial economy, be analyzed first. Here, Appellant has not satisfied the prejudice prong because he has not shown that without the attribution of another potential motive to kill Officer Miller, the verdict would have been different.

Second, Appellant claims that his counsel was ineffective for failing to request that an instruction be given contemporaneous with the admission of Lesko's confession that the confession could not be used against Appellant. Such an instruction was given when the jury was charged. N.T., Vol. II, at p. 1264. Appellant has not shown that he was prejudiced by having the proper instruction given at the charge, instead of when Lesko's redacted confession was read into evidence. Thus, Appellant's ineffectiveness claim fails.

Third, Appellant alleges that his own confession was improperly redacted, and that he was thus denied a fair trial. In this claim, he focuses on his account of the second shot fired at Officer Miller. Appellant had confessed that after he fired the first shot, "[t]he individual beside me says hit him again, and as impulse, I shot again." To protect Lesko's rights under *Bruton,* that statement was redacted so that it read: "I shot again."

Appellant claims that the portion of the statement that was deleted was exculpatory, and that deleting it undercut his defense as to the second shot he fired at Officer Miller.[9] Appellant's defense to the second shot was that his prolonged drug use had altered his mental state to such a degree that he was incapable of forming specific intent to kill. This is, as the PCRA court correctly denoted it, a "diminished capacity" defense.[10] Appellant argues that the redacted

9. Appellant raised separate defenses for the two shots that he fired at Officer Miller; he claimed that the first shot was an accident.

10. Diminished capacity is an extremely limited defense. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 28, 454 A.2d 937, 943 (1982). In asserting a diminished capacity defense, a defendant is attempting to prove that he was *incapable* of forming the specific intent to kill; if the defendant is successful, first degree murder is mitigated to third degree.

phrase would have shown that he fired the second shot impulsively, and this showing would have bolstered his argument that he lacked the specific intent to kill. We disagree.

■ We have consistently held that evidence that defendant lacked the ability to control his actions, or that he acted impulsively, will not establish diminished capacity. *Zettlemoyer*, 500 Pa. at 39, 454 A.2d at 949. *See also Commonwealth v. Terry*, 501 Pa. 626, 632, 462 A.2d 676, 679–680 (1983); *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976).[11] Since Appellant's diminished capacity defense could not be properly supported by the argument that he could not control his actions and acted impulsively, the redaction of a phrase which Appellant claims was relevant to establishing this illegitimate theory can not be said to have denied Appellant a fair trial. This issue thus has no merit.[12] Furthermore, because this issue is meritless, Appellant's claim that counsel was ineffective in failing to pursue this issue on appeal fails the first prong of *Pierce*.

## C. Issues Related to Appellant's Proffered Testimony

Appellant contends that the trial court "coercively precluded" him from testifying in his own behalf, and that his counsel

*Commonwealth v. Faulkner*, 528 Pa. 57, 70, n. 4, 595 A.2d 28, 35, n. 4 (1991).

11. In these cases, we addressed whether expert testimony on impulsivity or lack of control was admissible to prove diminished capacity. We note that the application of these cases is not limited to the admissibility of expert testimony. We did not reject this testimony because the experts somehow lacked the competence to speak to such issues; rather, we rejected this testimony because establishing that the defendant could not control his actions or acted impulsively is *irrelevant* to establishing a diminished capacity defense. Clearly, irrelevant testimony remains irrelevant, regardless of the source from which it emanates.

12. We note that the PCRA court examined this claim under the *Bruton* principle and determined that there was no *Bruton* violation. This was not the proper way to analyze this issue. Appellant's claim is indeed in reference to a redacted confession, which might tend to make one believe that *Bruton* is implicated; yet, this is Appellant's *own* confession which is in question. *Bruton*, which protects a defendant's rights to confront adverse witnesses as per the Confrontation Clause, would have no application here.

was ineffective for not pursuing this issue in post-trial motions.

During the guilt phase, Appellant desired to testify that the second shot he fired at Officer Miller was not intentional, but was an impulsive response brought on by drug abuse; Appellant wanted to limit his testimony to his drug use and the circumstances of the second shot fired at Miller. The Commonwealth asserted that Appellant could be cross-examined on relevant matters, including that the motive and intent for Officer Miller's murder was to avoid the detection of the Nicholls murder; the trial court ruled in the Commonwealth's favor. Appellant claims this ruling "coercively precluded" him from testifying.

The trial court was correct in its ruling, and cannot be characterized as "coercively precluding" Appellant from testifying. The right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine a witness on any facts tending to refute inferences or deductions arising from matters testified to on direct examination. *Commonwealth v. Dobrolenski*, 460 Pa. 630, 641, 334 A.2d 268, 273 (1975) (citing *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967).) Since Appellant wanted to testify that he lacked the intent to shoot Officer Miller, questions about whether he intended to kill Officer Miller in order to avoid detection of the Nicholls murder would thus be a proper subject of cross-examination. Thus, Appellant's claim is meritless. Furthermore, since this claim is meritless, Appellant's related ineffectiveness of counsel issue also fails as he has not met the first prong of the *Pierce* standard.

### D. Issues Related to the Prosecutor's Closing Argument

Appellant alleges that he was denied due process when the prosecutor engaged in misconduct at closing argument, and when the trial court failed to correct the prosecutor promptly and adequately. Appellant also alleges that his counsel was ineffective either for failing to object to these

statements, or for failing to pursue these issues on appeal. In assessing a claim of prosecutorial misconduct, we must

> determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding ... and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury.

*Commonwealth v. Chester,* 526 Pa. 578, 599, 587 A.2d 1367, 1377 (1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (citations omitted). *See also Baker,* 531 Pa. at 557, 614 A.2d at 671 (the Commonwealth is allowed to press its case with "logical force and vigor.")

Appellant first objects to the prosecutor's statements that there is a *presumption* that if an individual shoots at a vital part of body, that individual intended to kill the victim. Appellant correctly asserts that this is an improper statement of law. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[13] Appellant asserts that such a misstatement constitutes prosecutorial misconduct, and his counsel was ineffective for failing to object to request an immediate cautionary instruction. We disagree.

At the charge, the trial court corrected the prosecutor's misstatement, and correctly instructed the jury that

> [t]he law prescribes that when one uses a deadly weapon upon the body of another at some vital part of that body, with a manifest intention to use it on him, it can be reasonably inferred by the jury that the person so using the

**13.** In *Sandstrom,* the Court found that such a conclusive presumption shifts the burden to the defendant to disprove an element of the crime of which he stands charged; it was held that shifting the burden violates an accused's due process rights to have the state prove every element of a criminal offense beyond a reasonable doubt. The *Sandstrom* Court did observe that an instruction does not violate the due process clause where the jury is informed that an *inference* may be drawn about defendant's intent from his actions.

deadly weapon knew that his act was likely to cause death and that death was a probable and ordinary consequence of his act.

N.T., Vol. II, at p. 1280. Furthermore, the judge cautioned the jury to take the law from him and not from the attorneys. N.T., Vol. II, at p. 1257. The error was cured by the court's proper instruction on the law, and we cannot say that this error prejudiced the jury, forming in their minds fixed bias and hostility toward the accused. *Chester, supra,* at 578, 587 A.2d at 1367. Thus, Appellant's prosecutorial misconduct claim fails.

 Appellant also claims that in giving the above listed charge, the judge misled the jury when he did not stress that "manifest intention" was a critical component of the test. This argument is specious. There is no need for a court to emphasize any portion of a correct charge. The presumption in our law is that the jury follows instructions. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 55, 337 A.2d 873, 879 (1975).

 Next, Appellant contends that the prosecutor misstated Rutherford's testimony in his closing argument. In his closing argument, the prosecutor argued that Appellant's defense of accidentally shooting Officer Miller did not dovetail with Rutherford's testimony. The prosecutor stated that "[Rutherford] said he saw the gun between the seats and it was pointed" immediately before Appellant shot Officer Miller. N.T., Vol. II, at p. 1229. Furthermore, the prosecutor noted that Rutherford had not testified that .Appellant had stated that the shooting was an accident.

The prosecutor's statements cannot be characterized as a false account of Rutherford's testimony. Rutherford testified that he had sat in the back seat of the car and saw the gun as Appellant, who was in the front seat, held it; then, he saw a flash as Appellant fired the first shot. N.T., Vol. I, at p. 372. Likewise, the prosecutor's statement that Rutherford had not testified that Appellant had stated that the shooting was an accident was not prosecutorial misconduct; indeed, Rutherford did not indicate that Appellant claimed that the shooting was an accident. These statements cannot be characterized as

misstatements of the evidence, and they also could not have had the unavoidable effect of prejudicing the jury. *See Chester, supra,* at 578, 587 A.2d 1367.

Appellant also alleges that the prosecutor acted improperly when he argued that Appellant's desire to avoid detection of the Nicholls murder was a motive to kill Officer Miller. As discussed above, this Court decided on direct appeal that evidence of the Nicholls murder was properly admitted to prove motive and intent. *Travaglia I, supra,* 502 Pa. 474, 467 A.2d 288. The prosecutor did not engage in misconduct merely by referring to properly admitted evidence.

Lastly, Appellant alleges that the prosecutor engaged in misconduct in referring to the section of Appellant's redacted confession pertaining to the second shot fired at Officer Miller. Appellant alleges that without the "as impulse" language, such a reference by the prosecutor was prejudicial as it undercut his diminished capacity defense. As stated above, the redaction of the "as impulse" language was not error. In referring to this portion of the confession, the prosecutor was not engaging in misconduct.

Linked with each of these allegations of prosecutorial misconduct are claims that trial counsel was ineffective for failing to pursue these claims on appeal; all of these claims fail. Appellant has not established that the prosecutor exceeded the bounds of reasonable advocacy, and thus the underlying claims do not have merit; without such a showing, Appellant has not satisfied the first prong of the *Pierce* standard. *See Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199, 208 (1994).

## II. Alleged Errors at the Penalty Phase of Travaglia I

### A. Introduction of the Indiana County Guilty Plea

At the sentencing phase of trial, the Commonwealth introduced Appellant's guilty plea in Indiana County for the murder of Nicholls to establish an aggravating circumstance.[14]

14. 42 Pa.C.S. § 9711(a), (d)(10) states that a conviction of a federal or state offense, "committed either before or at the time of the offense at

Appellant alleges that this was improper. Appellant asserts that in exchange for his guilty plea in Indiana County, a non-use agreement was struck whereby the prosecutor in Indiana County agreed that Appellant's plea would not be introduced in the Westmoreland County trial.

Appellant raised this issue in his PCHA Petition. The guilty plea colloquy contained no mention of such an agreement; the court heard testimony from the parties involved in the Indiana County guilty plea to determine if such an agreement was made off the record. At the PCHA hearing, the court heard testimony from the judge who presided over the Indiana County proceedings, from attorneys involved in the proceedings, and from Appellant himself. Subsequently, the PCHA court determined that there was no non-use agreement, and therefore the introduction of the Indiana County guilty plea at the sentencing phase of the Westmoreland County trial was proper. The Superior Court affirmed this determination. *Commonwealth v. Travaglia,* 359 Pa.Super. 630, 515 A.2d 620 (1986). We denied allocatur. *Commonwealth v. Travaglia,* 518 Pa. 639, 542 A.2d 1368 (1987), *cert. denied, Travaglia v. Pennsylvania,* 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989). Thus, this issue has been fully litigated and is nonreviewable under the PCRA.

A determination that an issue has been previously litigated would usually mark the end of our review of a PCRA claim. In this instance, however, we believe that additional explanation is warranted in light of the proceedings in federal court pertaining to Appellant's codefendant, Lesko.

Lesko petitioned in federal court for a writ of habeas corpus. He, like Appellant, raised the issue of an alleged non-use agreement. Lesko, *un*like Appellant, did not receive a state court hearing on this issue. The Third Circuit thus remanded to the district court so that a factual determination could be made as to whether Lesko had a non-use agreement in effect. *Lesko v. Lehman,* 925 F.2d 1527, 1540 (3d Cir.1991).

issue, for which a sentence of life imprisonment or death was imposable," is an aggravating circumstance which may support the imposition of the death penalty. Second degree murder is such an offense.

On remand, the district court concluded that there had been a non-use agreement. *Lesko v. Lehman,* (1992 WL 717815) 1992 U.S.Dist. Lexis 1123 (W.D.Pa.1992). Appellant now asserts that the determination of the district court as to the existence of a non-use agreement somehow overrules the determination of our state courts. We disagree.

▇▇▇ Both the 1985 PCHA court and the *Lesko* federal district court resolved a factual dispute: whether a non-use agreement had indeed been struck in Indiana County. The 1985 PCHA court concluded that a non-use agreement was not in existence; the district court came to the opposite conclusion. Similar, nearly identical, records can legitimately support two different holdings; that two different holdings may result from similar records does not mean that one determination is somehow invalid. *Cf. Commonwealth v. Sullivan,* 472 Pa. 129, 145, 371 A.2d 468, 476 (1977). A factual determination by a federal district court in no way "overturns" the factual determination made by, and subsequently affirmed by, the courts of our Commonwealth.[15]

Finally, Appellant alleges that he received ineffective assistance of counsel when his trial counsel did not request an immediate evidentiary hearing as to whether there was a non-use agreement. Appellant has not established that the result would have been different had his counsel made such a

15. To further support his contention that we are bound by the decisions of federal courts inferior to the United States Supreme Court, Appellant cites to *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 620, n. 5, 375 A.2d 1285, 1288, n. 5 (1977). Appellant states that in *Schreiber,* this Court has agreed to be bound by Third Circuit determinations that certain acts or practices violate federal constitutional rights. Such a holding, however, would have no application here. Both the 1985 PCHA court and the federal district court resolved a *factual* matter, and not a matter of constitutional law. Furthermore, even though *Schreiber* is inapplicable here, we now note that the validity of this case is seriously questioned to the extent that it can be read to stand for the proposition that this Court is *bound* by federal courts inferior to the United States Supreme Court. We will, of course, continue to turn to the decisions of the Third Circuit for guidance on issues of federal constitutional law where the U.S. Supreme Court has not spoken on an issue in question.

request at trial, rather than raising it in the PCHA petition; thus, Appellant fails to meet the third prong of *Pierce.*

## B. Issues Relating to Mitigation Evidence

 To establish the mitigating circumstance that he did not have a significant history of prior convictions [16], Appellant desired to introduce a report from the National Crime Information Center ("NCIC") documenting that he did not have any prior convictions. The prosecutor objected to the admission of this report, and the trial court sustained the objection. Appellant complains that this constituted prosecutorial misconduct and judicial error.

The court, in ruling on the objection, analyzed this document to determine whether it was within the business records exception to the hearsay rule.[17] The trial court refused to admit the report because Appellant did not present anyone who could testify as to the preparation or maintenance of the records kept by NCIC; the judge indicated that he was particularly concerned about the accuracy of the record because in his experience as a jurist, he had encountered inaccuracies in these types of reports. N.T., Vol. III, at pp. 1618– 1619. The inability to confirm trustworthiness is a proper basis for refusing to admit a document as a business record. *See* 42 Pa.C.S. § 6108(b); *Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025 (1993). Thus, Appellant's claim that the trial court erred is meritless. Furthermore, since this claim is meritless, Appellant's assertion that counsel was ineffective for failing to pursue this claim on appeal also fails because he has not satisfied the first prong of the *Pierce* standard.

Appellant's argument that the prosecutor engaged in misconduct when he objected to the admission of the NCIC report is similarly meritless.[18] It was not misconduct for the

16. 42 Pa.C.S. § 9711(e)(1).

17. This exception is codified at 42 Pa.C.S. § 6108.

18. Appellant also seems to be of the belief that the prosecutor engaged in misconduct when he refused to stipulate that Appellant lacked a prior criminal history. Appellant is incorrect. A party is not required, nor can it be required by a court, to stipulate to a portion of an

132

prosecutor to object to the admission of this document, particularly since this objection had a legitimate basis. Additionally, because this claim of prosecutorial misconduct is meritless, Appellant's related ineffectiveness of counsel claims also fail because he has not satisfied the first prong of the *Pierce* standard.

■ Next, Appellant alleges that the prosecutor engaged in misconduct in questioning one of Appellant's witnesses. Appellant called the Clerk of Courts of Westmoreland County to testify that Appellant did not have a criminal record. On cross-examination, the prosecutor questioned the clerk and established that the records on which the clerk relied pertained only to Westmoreland County. Appellant asserts that this was tantamount to improperly misrepresenting the truth as the prosecutor's questioning could have lead the jury to believe that Appellant had convictions outside of Westmoreland County. Contrary to Appellant's assertion, the prosecutor did not "misrepresent" the truth; rather, he clarified the scope of the clerk's purview. Furthermore, Appellant's speculations · as to what a jury could have believed are mere sophistry. *See Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568 (1992) (appellate court will not speculate as to what the collective mind of the jury could have thought.) As a reviewing court, we do "not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury . . . will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974). Because this issue is meritless, Appellant's related ineffectiveness claim fails.

■ Next, Appellant alleges that the trial court improperly excluded evidence that he had suffered the hostility of his father and in general had a troubled family life.[19] Appellant

opposing party's case. *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982).

19. This evidence was relevant to establish the mitigating circumstance of 42 Pa.C.S. § 9711(e)(8) (the jury may consider "[a]ny other evidence

refers to the testimony of two of his witnesses, Rudolph and Edna Perfetti, some of which was determined to be inadmissible. Appellant states that failing to admit this proffered testimony violated *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).

Appellant is correct in stating that an accused is allowed to present a broad range of evidence to establish a mitigating factor. The United States Supreme Court has held that where the death penalty is sought, the sentencer may not be precluded from considering, "as a mitigating factor, any aspect of a defendant's character or record. . . ." *Id.* at 4, 106 S.Ct. at 1670–71. Pennsylvania's death penalty sentencing scheme also provides that the jury may consider "*any* other evidence of mitigation. . . ." 42 Pa.C.S. § 9711(e)(8) (emphasis supplied). Yet, neither *Skipper* nor Pennsylvania's sentencing scheme suspends the rules and law of evidence; the proffered evidence must be competent, or it may not be presented to the jury.

A review of the record indicates that the court was correct in ruling that portions of the Perfettis' testimony was inadmissible. Portions of Mr. Perfetti's testimony were excluded when he attempted to testify as to how Appellant's father treated Appellant, events of which Mr. Perfetti had no personal knowledge; the court properly excluded this testimony as it was hearsay.[20] As to Mrs. Perfetti, several of her answers were deemed inadmissible as they were non-responsive. As the testimony was properly excluded, Appellant's claim is meritless.[21]

Appellant also raises the claim that counsel was ineffective for failing to pursue on appeal the issue that he was improperly precluded from presenting mitigation evidence through the

of mitigation concerning the character and record of the defendant and the circumstances of the offense.")

[20]. The court did allow Mr. Perfetti to testify as to Appellant's state-of-mind concerning Appellant's father. *See* N.T., Vol. III, at p. 1562.

[21]. We note that Appellant's mother and aunt both testified as to Appellant's poor relationship with his father and his troubled family life.

134

Perfettis. As the underlying issue has no merit, Appellant's ineffectiveness claim fails.

## C. Issues Related to the Prosecutor's Closing Argument

Appellant raises several claims of prosecutorial misconduct during closing argument at sentencing phase. As stated above, a prosecutor's statements to the jury will not be considered improper unless their unavoidable effect is to prejudice the jury so that a true verdict cannot be rendered because the existence of bias and hostility makes it impossible to weigh the evidence in a neutral manner. *See Baker, supra.* At the penalty phase, where the presumption of innocence is no longer applicable, the prosecutor is permitted even greater latitude in presenting argument. *Id.* The prosecutor may "present argument for or against the sentence of death" [22] and may employ oratorical license and impassioned argument. *Id.* at 560, 614 A.2d at 671–672.

Appellant first alleges that the prosecutor engaged in misconduct when he remarked that Lesko did not express remorse for his victims when he took the stand at the sentencing hearing. Appellant notes that since the Third Circuit determined that this remark violated Lesko's Fifth Amendment privilege against self-incrimination,[23] then Appellant's privilege against self-incrimination was also violated. This argument is specious. The prosecutor referred to Lesko by name in his remarks, and never made even the barest of allusions to Appellant in this section of his closing argument. A finding that Lesko's privilege against self-incrimination was violated does not translate into finding that Appellant's rights were also violated merely because Appellant and Lesko were tried together. Therefore, this first claim is meritless. Since the underlying claim is meritless, the related ineffectiveness claim also fails because Appellant has not satisfied the first prong of *Pierce.*

22. 42 Pa.C.S. § 9711(a)(3).

23. The Third Circuit found this Fifth Amendment violation, of all the alleged errors, to be the one that was "particularly troubl[ing]." *Lesko v. Lehman,* 925 F.2d 1527, 1541 (1991).

Next, Appellant alleges that the prosecutor's remarks to the jury that they should show the same sympathy to Appellant as Appellant showed to Officer Miller on the day of the killing constituted prosecutorial misconduct as it was an appeal to vengeance.[24] This issue has already been litigated. *Travaglia I,* 502 Pa. at 500–501 and 502–503, 467 A.2d at 301 and 302. Thus, Appellant may not obtain relief under the PCRA. 42 Pa.C.S. § 9543(a)(3).[25] Since the underlying claim has already been litigated, Appellant's related ineffectiveness of counsel

**24.** Appellant objects to the following passage in the prosecutor's closing:

> "So I'll say this: Show them sympathy. If you feel that way, be sympathetic. Exhibit the same sympathy that was exhibited by these men on January 3, 1980. No more. No more. I want you to remember this: we have a death penalty for a reason. Right now the score is John Lesko and Michael Travaglia two, society nothing, When will it stop? Who is going to make it stop? Who is going to make it stop? That is your duty."

**25.** We are cognizant of the fact that the Third Circuit's interpretation of these comments varied from this Court's interpretation in *Travaglia I. See Lesko, supra.* We note, however, that even if the federal *Lesko* holding were somehow applicable to Appellant's PCRA claim, Appellant would still not be entitled to relief.

In *Lesko,* the Third Circuit determined that the prosecutor had twice engaged in misconduct: first, when he violated Lesko's Fifth Amendment privilege against self-incrimination; second, when he told the jury to show Lesko the same sympathy Lesko showed Officer Miller. It was the Fifth Amendment violation that "particularly troubled" the Third Circuit. *Lesko,* 925 F.2d at 1541. The court concluded that these two instances of inappropriate comments by the prosecutor could not be deemed harmless error given that the Commonwealth's aggravating evidence was counterbalanced by Lesko's "considerable" mitigation evidence. The court listed as its first example of this "considerable" mitigation evidence the fact that Lesko, not being the trigger man, had a relatively minor role in the homicide. *Id.* at 1546–1547.

Appellant is situated quite differently. First, as discussed above, his privilege against self-incrimination was not violated. Without having the violation which "particularly troubled" the Third Circuit, it cannot be argued that Appellant is similarly situated. Second, Appellant's mitigation evidence was not as "considerable" as Lesko's. As the trigger man, Appellant's role in the homicide could never be described as minor. Thus, two factors which the Third Circuit panel found critical to its decision to grant Lesko a new sentencing hearing are not present in Appellant's case.

136

claim also fails. *See Peterkin, supra,* 538 Pa. 455, 649 A.2d 121.

■ Appellant next asserts that the prosecutor engaged in misconduct when he argued that Appellant had not established the mitigating circumstance of "no significant history of prior convictions" since Appellant had shown only that he did not have a criminal record in Westmoreland County. The prosecutor's argument here was proper, and thus Appellant's argument fails. Appellant was required to establish any mitigating circumstances by a preponderance of the evidence. 42 Pa.C.S. § 9711(c)(1)(iii). This burden was for Appellant to carry, and argument on the part of the prosecution that Appellant had not met his statutory burden was not improper. Accordingly, Appellant's related ineffectiveness of counsel claim also fails as the underlying claim has no merit.

■ Finally, Appellant alleges that the prosecutor engaged in misconduct when he suggested that the death penalty would be the only way to protect society against Appellant.[26] In *Commonwealth v. Christy,* 511 Pa. 490, 515 A.2d 832 (1986), we addressed a claim of prosecutorial misconduct that is similar to the one presented to us now. At the sentencing phase in *Christy,* the prosecutor stated that society would be victimized again by the defendant if the defendant were not sentenced to death. *Id.* at 511, 515 A.2d at 843. We held that although a prosecutor's statement may be inappropriate, the question to be asked is whether that statement prejudiced the jury such that they could not weigh the evidence and render a true verdict. *Id.* Recognizing that the prosecutor is permitted to argue in favor of the death penalty, we determined that the comment was no more than permissible "oratorical flair" in arguing for the death penalty, and did not prejudice the jury. *Id.* We see no reason to hold differently here. Furthermore, Appellant's related ineffective assistance of counsel claim fails; as the prosecutor did not

26. The statement to which Appellant objects is as follows:
"What will make the killing stop? Will prison guards? These men killed a police officer in the line of duty. What will make them stop from killing again? What's going to stop them from spilling more innocent blood? You have to exercise society's right to protect itself. That's why we have a death penalty; that's why we still have a death penalty." T.T. at p. 1700.

exceed the bounds of reasonable advocacy, trial counsel cannot be deemed ineffective for failing to pursue this issue on appeal. *Blount, supra,* at 156, 647 A.2d 199.

### D. Issues Relating to the Trial Court Instructions

■ Appellant presents two arguments as to why the trial court's instructions at sentencing were improper. First, Appellant alleges that the trial court's instructions gave the jury the impression that they had to be unanimous to find a mitigating factor, and thus the charge violates *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).[27] This first argument is specious.

The trial judge's charge to the jury almost exactly mirrored 42 Pa.C.S. § 9711(c)(1)(iv). N.T., Vol. III, at pp. 1703 and 1706. We have held that this statutory language does not "state or infer a requirement that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict." *Commonwealth v. Frey,* 520 Pa. 338, 347, 554 A.2d 27, 31 (1989), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990). An instruction that tracks the language of the statute, such as the one given here, cannot be in violation of the *Mills* standard. *Id.*

■ Second, Appellant states that the trial court erred when it gave this instruction:

"Now, the verdict is for you, members of the jury. Remember and consider all of the evidence, giving it the weight to which you deem it is entitled. Your decision should not be based on sympathy, because sympathy could improperly sway you into one decision—into a decision imposing the death sentence, or could improperly sway you against the decision of imposing the death sentence. There

27. In *Mills,* the Court held that where there is a substantial probability that reasonable jurors could understand that they must unanimously find a mitigating factor before they could consider it in weighing aggravating circumstances against mitigating circumstances, the sentence must be vacated. *See also Commonwealth v. Billa,* 521 Pa. 168, 186, 555 A.2d 835, 844 (1989).

is sympathy on both sides of that issue. Sympathy is not an aggravating circumstances; it is not a mitigating circumstance."

N.T., Vol. III, at p. 1706. This argument also lacks merit. We have held that the Pennsylvania death penalty statute does not permit a jury to avoid imposition of a death sentence through the exercise of unbridled discretion or sympathy. *Commonwealth v. Rainey*, 540 Pa. 220, 656 A.2d 1326 (1995); *Commonwealth v. Zook*, 532 Pa. 79, 104, 615 A.2d 1, 13 (1992). The trial court here properly instructed the jury as to its permissible scope of discretion.

Because neither of these claims has any merit, the related ineffective assistance of counsel claims also fail.

### E. Allegation of Judicial Bias

Appellant alleges that Judge Mihalich revealed his bias by admitting evidence of the Nicholls homicide and of the guilty plea in Indiana County, and by his repeated adverse and erroneous rulings. Appellant concludes that this alleged bias deprived him of a fair trial. Appellant also alleges that counsel was ineffective for failing to move for the judge to recuse himself.

As discussed above, Appellant's allegations of judicial error have been deemed meritless; simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant. If the appellate court determines that the party alleging judicial bias received a fair trial, then the allegation of judicial bias is not borne out. *See Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985). Thus, Appellant's claim of judicial bias fails. Similarly, Appellant's claim that counsel was ineffective for failing to move for the judge to recuse himself also fails; counsel cannot be deemed ineffective for failing to raise a meritless claim.

Finally, Appellant complains that the cumulative effect of errors made the trial so fundamentally unfair so as to deprive Appellant of due process. We disagree. We have determined, either on direct appeal or in this review of Appellant's

PCRA petition, that the overwhelming majority of Appellant's claims are devoid of merit; no quantity of meritless issues can aggregate to form a denial of due process. On one issue [28] we assumed, *arguendo,* that there was merit, but concluded that this alleged error could not have created a fundamentally unfair trial. The "aggregate" of one error would lead to the identical conclusion reached earlier: there was no denial of due process.

## III. 1985 PCHA Hearing

Appellant claims that he was denied effective assistance of counsel at the PCHA hearing, and that the PCHA court committed several errors.

 In order for Appellant to raise an ineffective assistance of counsel claim, Appellant must have a constitutional right to counsel at the phase of the proceeding in which he is alleging that counsel was ineffective. This Court recently adopted federal case law which held that under the United States Constitution, an accused does not have a right to counsel in state collateral proceedings. *Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877 (1995). Thus, under federal law, Appellant's claims that he received ineffective assistance of counsel at his PCHA hearing would be denied.

In the interest of giving a condemned man the benefit of every possible doubt, however, we will assume *arguendo* that the Pennsylvania Constitution would provide the right to counsel at a collateral attack, and thus would provide greater rights than does the federal constitution.[29] Even with this assumption, however, Appellant would still not be entitled to relief as he has not established that his counsel was ineffective.

28. This issue was related to the redaction of Lesko's confession discussed at section I.B., *supra.*

29. We stress that we are assuming this point *only* for the sake of argument. We are in no fashion now deciding the issue of whether the Pennsylvania Constitution gives an appellant a right to counsel at a collateral proceeding.

First, Appellant alleges that his PCHA counsel, Dante Bertrani,[30] was ineffective for failing to request recusal of Judge Mihalich since the judge was clearly biased at the guilt and sentencing phases of the trial. As discussed above, Appellant has not established that there was any merit to the claim that the judge was biased at his trial. Appellant's counsel therefore cannot be deemed ineffective for failing to call for Judge Mihalich's recusal since the underlying claim is without merit.

Second, Appellant alleges that it was "error" for Bertrani to represent him at the PCHA hearing because it precluded Appellant from claiming that Bertrani had been ineffective at his trial.[31] This claim is without merit. As discussed above, Appellant has failed to establish any of his claims that he received ineffective assistance of counsel at trial; thus, Bertrani cannot be deemed ineffective for precluding Appellant from raising them at the PCHA hearing.

Third, Appellant claims Bertrani was ineffective when he failed to call as witnesses Lesko's Indiana County counsel, one of the prosecutor's in the Indiana County proceedings, and Bertrani himself.[32] Without these witnesses, Appellant claims, he was not able to establish that there had been a non-use agreement.

At the PCHA hearing, the following witnesses testified as to their understanding of the Indiana County guilty plea arrangements: the judge who presided over the Nicholls homicide case in Indiana County; the two attorneys who represented Appellant in the Indiana County case; one of the attorneys who represented Appellant in the Westmoreland County trial; one of the two attorneys who had been assigned to prosecute

30. Bertrani was also Appellant's trial counsel.

31. We assume that Appellant is raising an ineffectiveness of counsel claim here, although he has not denoted it as such and has not analyzed it under the *Pierce* standard.

32. Although Bertrani was not called as a witness, he did testify as to the alleged non-use agreement as "an officer of the court." PCHA Hearing Trans. at pp. 8–13. The Commonwealth did not object to this statement, and thus it was before the PCHA court.

the Nicholls homicide case, and Appellant himself. Appellant has not demonstrated how the result of the PCHA court would have been different if the court had the testimony from not only the witnesses the court did hear, but also had testimony from Martin and Armstrong, as well as additional testimony from Bertrani. Without this showing, Appellant cannot meet the prejudice prong of an ineffectiveness claim.

Appellant next alleges that counsel was ineffective when counsel failed to brief the PCHA court on the legal standard for determining whether a non-use agreement was part of the plea bargain.[33] In setting forth this ineffectiveness claim, Appellant has not established that he was prejudiced by this alleged error. The PCHA court reviewed the plea colloquy and the events leading up to and following the colloquy, and heard the testimony presented at the PCHA hearing. The court determined that, in light of all the evidence presented, the accounts given by Appellant and Appellant's attorneys that there was an actual non-use agreement were not credible.[34] Where an account of events is found to be not credible, it cannot possibly form the basis of a "reasonable belief;" thus, even if the standard had been properly briefed, Appellant has not established that the result would have been different. Appellant has thus failed to establish prejudice.

Appellant's final claim of ineffectiveness was that Bertrani was ineffective for failing to object to the admission of testimony concerning the prosecutor's perspective on the non-use agreement. Appellant, relying on *Alvarado, supra,* at 442 Pa. 516, 276 A.2d 526, alleges that only Appellant's interpretation of the plea agreement was relevant, and thus testimony from the prosecutor was "immaterial." Appellant is incorrect; testimony from the prosecutor as to what happened during negotiations and as to what the agreement contained

33. Appellant states that the proper standard for determining the content of a plea agreement is examining what the defendant reasonably believed the agreement to contain. *See Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971).

34. The court noted that two defense attorneys "vividly remember what is helpful to [Appellant's] contention and have convenient amnesia about those matters which would be adverse to Defendant's position." PCHA court slip op. at p. 13.

would certainly be relevant to the question of whether Appellant's understanding was *reasonable*. A test of whether a person's belief is reasonable necessitates looking at factors external to the person being examined—factors such as the observations of others privy to the plea agreement.

 Appellant raises two claims that the PCHA court erred. First, Appellant alleges that it was error to appoint Bertrani as counsel because Bertrani was thus unable to testify as to the alleged non-use agreement and Appellant was unable to raise claims that Bertrani had been ineffective at trial.[35] This argument is specious.

In his PCHA petition, Appellant had the opportunity to mark that he wanted another attorney appointed to him. Instead, Appellant marked that he was represented by counsel and gave Bertrani's name. Appellant does not indicate that he ever informed the court that he desired alternate counsel. It is not incumbent upon the court to determine strategy for an appellant; furthermore, Appellant cannot now be heard to complain that the court erred merely because it granted that which Appellant had requested.

Second, Appellant alleges that it was error for the PCHA court to deny his request to amend his 1985 PCHA Petition. In the middle of the PCHA hearing, Appellant requested to amend his PCHA Petition and add an issue raising prosecutorial misconduct.[36] Because the request was untimely, it was denied. There was no error.

## IV. 1991 PCRA Petition

Appellant raises two issues relevant to his PCRA hearing. The first is that Judge Mihalich was biased, and should have recused himself. The second is that the judge issued an inadequate opinion.

**35.** Appellant did not indicate in his PCHA petition that he was challenging Bertrani's effectiveness as counsel.

**36.** We note that these issues of prosecutorial misconduct were ultimately raised in Appellant's 1991 PCRA petition. We have addressed these issues above, and found them to be meritless.

■ Appellant alleges that Judge Mihalich demonstrated that he was biased through the rulings he made at guilt phase and sentencing phase, and also through statements Judge Mihalich made to the press subsequent to the PCHA hearing. As we stated above, the allegation that Judge Mihalich was biased at the sentencing and guilt phase is without foundation; the rulings which Appellant notes as being indicative of bias were all upheld on appeal. Furthermore, the manner in which Judge Mihalich presided over the PCHA hearing was proper. We now address Appellant's allegations that the actions of Judge Mihalich subsequent to the trial and to the PCHA petition establish that Judge Mihalich was biased against him and should have recused himself at the PCRA hearing.

After Appellant's trial and the conclusion of his first collateral attack, Judge Mihalich made a number of public statements concerning Appellant.[37] We do not approve of members of the judiciary speaking to the press about cases pending before them [38]; yet, a jurist who has made such ill-advised

**37.** Appellant directs our attention to several newspaper articles in which Judge Mihalich had been quoted. In many of these articles, Judge Mihalich employed Appellant's case as an example of how cumbersome and protracted the appeals process can be where the appellant has been sentenced to death. Below are excerpts from those articles:

"If it takes seven years, a half-dozen appeals and hundreds of thousands of taxpayers' dollars to determine if the murderer of a policeman and three other individuals received a fair trial, something is drastically wrong with our system." *Pittsburgh Post–Gazette*, May 4, 1988.

"If it takes approximately 10 years to determine whether or not I gave them a fair trial, there's something wrong with the judicial system...." *Greensburg Tribune Review*, Section B, January 9, 1990.

"I am shocked that it takes 11 years in our judicial system to find an excuse to avoid the death penalty. If anyone deserves to die, these two individuals (Appellant and Lesko) do for killing four people for fun." *Valley News Dispatch*, February 14, 1991.

Judge Mihalich made a final comment to the press after Appellant filed his PCRA petition. Judge Mihalich was quoted as stating, "I know I am not biased, I know that I gave them a fair trial. I know that I could give them (sic) a fair hearing on their (sic) present petition." *Valley News Dispatch*, May 3, 1991.

**38.** In fact, by making such comments, the jurist could be seen as being in violation of the Code of Judicial Conduct. *See* Canon 3A(6) ("[a] judge should abstain from public comment about a pending proceeding in any court....")

comments does not necessarily abuse his or her discretion when he denies a motion for his or her disqualification.

A motion for disqualification or recusal is properly directed to and decided by the jurist whose participation is challenged. *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989). In disposing of a recusal request, a jurist must first make a conscientious determination of his or her ability to assess the case before the court in an impartial manner, free of personal bias or interest in the outcome. "This is a personal and unreviewable decision that only the jurist can make." *Id.* at 201, 565 A.2d at 764. Once satisfied with that self-examination, the jurist must then consider whether or not continued involvement in the case would tend to undermine public confidence in the judiciary. *Id.* at 201–202, 565 A.2d at 764. In reviewing a denial of a disqualification motion, we "recognize that our judges are honorable, fair and competent. Once the decision is made, it is final. . . ." *Reilly,* 507 Pa. at 222, 489 A.2d at 1300.

Judge Mihalich, in a thoughtful opinion, detailed the examination of his conscience. He stated that "[t]o say that the Court is highly dissatisfied with the present system of perpetual appellate activity is not to say that the Court would vent its frustrations by arbitrarily giving [Appellant's] current arguments less than the full and complete attention required by law." Slip op., dated October 9, 1991, p. 10. Judge Mihalich candidly noted that the crime which Appellant committed was heinous, but observed that courts were often required to preside over cases where the subject matter is disturbing; the requirements of due process, he stated, are unaffected by such circumstances. The judge concluded by stating that he did not believe public confidence would be affected by him presiding over PCRA; Appellant's motion for recusal was thus denied. Because we cannot find that this constituted an abuse of discretion, Appellant's claim fails.

■ Appellant's final claim is that the PCRA court's opinion did not comport with Pa.R.Cr.P. Rule 1508(d)(3). That rule requires that a judge, at the conclusion of post-conviction

relief hearing, "state on the record, or issue and serve upon the parties, findings of fact and conclusions of law on all *material* issues." (emphasis supplied). Appellant seems to believe that it was error for the judge to decline to make individualized findings on Travaglia's 174 findings of fact and 37 conclusions of law. We disagree, and hold that the thorough twenty-nine page opinion issued by Judge Mihalich satisfied the requirements of the rule. Appellant's final claim is thus meritless.

For the foregoing reasons, the orders of the Court of Common Pleas of Westmoreland County are affirmed.[39]

ZAPPALA, J., concurs in the result.

PAPADAKOS, J., did not participate in the consideration of this matter.

MONTEMURO, J., is sitting by designation.

---

**39.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case back to the Governor. 42 Pa.C.S. § 9711(i).