J-S75040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLAVNIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KADEEM COOK, | |
| Appellant | No. 1530 EDA 2014 |

Appeal from the PCRA Order entered April 17, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0002931-2010,
CP-51-CR-0002932-2010 & CP-51-CR-0005353-2010

BEFORE:  ALLEN, LAZARUS, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED DECEMBER 04, 2014**

Kadeem Cook ("Appellant") appeals from the order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. sections 9541-46.  We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> On October 7, 2009, Danielle Dickson took Regional Rail to the Fern Rock Transportation Center ("Fern Rock") in North Philadelphia.  At approximately 10 p.m., Ms. Dickson was walking from the train to her bus stop when [Appellant] approached her and pressed a gun to her neck. [Appellant] told her to "drop everything, keep walking." Ms. Dickson complied, dropping her purse and backpack to the ground and walking straight ahead.  [Appellant] grabbed the items and left, at which point Ms. Dickson ran to a subway cashier for help.  Police interviewed Ms. Dickson both at Fern Rock and later at the police station, and she described the man who robbed her.

On October 8, 2009, Kyle Goldstein was sitting on a bench at Fern Rock, waiting to take Regional Rail home. At approximately 11:50 p.m., Mr. Goldstein felt a gun pressed to the back of his head. When he turned his head to the side, [Appellant] hit him in the eye with the butt of the gun, then told him to empty his pockets. Mr. Goldstein complied while [Appellant] held him at gunpoint. After Mr. Goldstein had emptied his pockets and left their contents on the bench, along with his backpack and computer, [Appellant] pushed him onto the train tracks and told him to run. Mr. Goldstein complied and ran down the tracks, then hid beneath a platform. After [Appellant] disappeared from view, Mr. Goldstein climbed to the mezzanine level for help. When police arrived, he described both [Appellant] and the gun, noting to police that the gun had a "very long barrel." He then sought medical attention for his injuries.

On October 10, 2009, at approximately 11 p.m., Officer Matthew Hagy received information regarding a point-of-gun robbery that had just occurred at the intersection of Fourth Street and Champlost Street. One block away from the robbery, Officer Hagy encountered [Appellant] and two other males, and did a pat down and frisk of the three men. [Appellant] had a long-barreled BB gun tucked into the waistband of his pants, which Officer Hagy confiscated. When a flash description of the robbery suspects came over Officer Hagy's radio, he realized the three men he had stopped did not match the description, and released them. Officer Hagy brought the BB gun to the police station, where it remained in a safe box until December 3, 2009.

On October 17, 2009, Ms. Dickson, the victim of the October 7, 2009 robbery, checked the online account of her cell phone, which had been in her stolen purse, to see if there was any recent activity. Ms. Dickson's cell phone was configured to automatically back up photos taken with her cell phone to an online album that she could view on her computer. While viewing her online album of photos taken with her cell phone, Ms. Dickson discovered two photos of a man holding a gun. She immediately recognized the person in the photos as her assailant, and recognized the long-barreled gun that was used to rob her. The person depicted in the photos was [Appellant]. She

contacted detectives and provided them with copies of the two photographs.

On November 10, 2009, Bonnie Riley was [in] Fern Rock, walking from Regional Rail to her car, which she kept parked at the station. At approximately 5:45 p.m., as Ms. Riley reached her minivan and began loading shopping bags into the backseat, [Appellant] grabbed her from behind. Ms. Riley screamed, at which point [Appellant] put a gun to her head and repeatedly demanded her car keys. As Ms. Riley attempted to give [Appellant] her keys, he hit her in the forehead with the butt of the gun and then punched her in the face. Ms. Riley fell to the ground and began crawling away from [Appellant]. [Appellant] attempted to get the van's sliding door to close, then climbed into the driver's seat of the van. As a train pulled into the Fern Rock station and the parking lot began to fill with people, [Appellant] fled, leaving the van and the victim behind. When police arrived, Ms. Riley described her attacker, then went to the police station and filed a report, before seeking medical attention for her injuries.

On November 19, 2009, Crystal Valentine, Associate Director of Delta Community Supports ("DCS"), carried out a search of [Appellant's] DCS-provided apartment. Ms. Valentine found a second BB gun in [Appellant's] dresser drawer, which she confiscated.

On December 3, 2009, Officer Hagy saw the photographs taken by Ms. Dickson's cell phone air on the local news, and recognized both [Appellant] as the man he stopped on October 10, 2009, and the long-barreled BB gun he had confiscated and placed in the station's safe box. Officer Hagy alerted his Sergeant to the situation.

On December 4, 2009, police showed Bonnie Riley and Kyle Goldstein a photo array including [Appellant]. Each victim identified [Appellant] as the man who robbed and assaulted them. On February 3, 2010, Bonnie Riley and Kyle Goldstein attended a lineup and both "immediately" recognized and identified [Appellant] as their attacker. [Thereafter, police arrested Appellant for the series of robberies.]

Trial Court Opinion, 7/22/14, at 2-5 (citations to notes of testimony omitted).

Following a bench trial on November 2, 2010, the trial court found Appellant guilty of three counts of robbery, two counts of aggravated assault, one count of attempted robbery of a motor vehicle, and three counts of possessing an instrument of crime. On January 6, 2011, the trial court imposed an aggregate sentence of eight to twenty years of imprisonment. Appellant filed a timely appeal to this Court. In an unpublished memorandum filed on March 13, 2012, we affirmed Appellant's judgment of sentence. **Commonwealth v. Cook**, 47 A.3d 1243 (Pa. Super. 2012). Appellant did not file a petition for allowance of appeal to our Supreme Court.

On June 8, 2012, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, and, on May 25, 2013, PCRA counsel filed an amended petition. In his amended petition, Appellant asserted that trial counsel was ineffective for failing to pursue and/or present an alibi defense. On March 7, 2014, the PCRA court issued Pa.R.A.P. 907 notice of intent to dismiss Appellant's PCRA petition without a hearing. Appellant did not file a response. By order entered April 17, 2014, the PCRA court dismissed Appellant's amended PCRA petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

> I. Did [Appellant's] PCRA Petition present sufficient evidence of an alibi defense for the petition to have been granted or for an evidentiary hearing to be held?

Appellant's Brief at 8.

In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." ***Id.*** Moreover, a PCRA court may decline to hold a hearing if it determines that a petitioner's claim is patently frivolous and is without a trace of support either in the record or from other evidence. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa. Super. 2001).

To be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Johnson***, 966 A.2d at 532. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective

upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*), *appeal denied*, 852 A.2d 311 (Pa. 2004).

Appellant asserts that trial counsel was ineffective for failing to pursue his claim of an alibi defense with regard to the robbery of Ms. Dickson. According to Appellant, prior to trial he informed trial counsel that he was at school from 6:30 p.m. to 10:00 p.m., on the evening when Ms. Dickson was robbed. In support of this claim, Appellant attached documents which allegedly demonstrated his attendance at the Orleans Technical Institute.

"Generally, an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed

therefrom as to render it impossible for him to be the guilty party … At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi." **Commonwealth v. Ali**, 10 A.3d 282, 316 (Pa. 2010) (citation omitted). Here, the PCRA court found that Appellant's ineffectiveness claim failed for two reasons:

> First, [Appellant's] proffered evidence failed to establish an alibi. The records of the Orleans Technical Institute submitted by [Appellant] only purported to show that [Appellant] was present at a class on October 7, 2009, that was scheduled to begin at 6:30 p.m. and was scheduled for 3½ hours. No records were submitted to show when class actually ended that day or when [Appellant] left the class. In addition, [Ms. Dickson] testified at trial that the October 7 robbery occurred "around 10" and the police report of the robbery reported the time of the occurrence to be 10:10 p.m. [Appellant] proffered no evidence to suggest that [he] could not have gotten to the scene of the robbery from the school in the allotted time.

> Second, the evidence conclusively establishes that [Appellant] could not have been prejudiced by the alleged failure of trial counsel to investigate and present his proffered alibi. That alibi, even if believed, only pertained to the robbery of October 7, 2009, and was irrelevant to the robberies on October 8, 2009, and November 10, 2009. Notably, the victims of all three robberies positively identified [Appellant] as the perpetrator of the robberies. As the Superior Court concluded in its decision affirming [Appellant's] conviction on direct appeal: "The underlying facts of the three [robberies] include such similarities that one would tend to prove the identity of [Appellant] as the perpetrator of the other. The three robberies share remarkable similarities, evidencing a pattern of conduct and common relationship among the offenses." [**Cook**, unpublished memorandum at 6.]

> More importantly, the independent evidence that [Appellant] committed the October 7, 2009 robbery was

overwhelming. Unfortunately for [Appellant], Ms. Dickson, the victim of the October 7 robbery, had configured her cell phone, which was stolen in the robbery, to automatically post any photographs taken with that phone to an online album. [Appellant], apparently thinking himself to look impressive with a weapon, snapped two photographs of himself [using] the stolen phone, which depicted [him] holding the distinct long-barreled gun used in the robbery. When Ms. Dickson reviewed her online album, she immediately recognized both [Appellant] and his gun from the night of the robbery. This was the same gun that was seized from [Appellant] by police on October 10th, during an unrelated robbery investigation. All of this conclusively established [Appellant's] guilt of the October 7 robbery.

Accordingly, the record establishes that [Appellant's] proffered evidence failed to establish an alibi, and that [trial] counsel's alleged failure to investigate and present such evidence could not have prejudiced [Appellant]. Therefore, [Appellant's] claim that counsel was constitutionally deficient in her representation of [Appellant] was properly rejected.

PCRA Court Opinion, 7/22/14, at 6-8 (citations omitted).

Our review of the record supports the PCRA court's conclusions. When a PCRA petitioner raises a claim of ineffectiveness, he or she must set forth an offer to prove at an appropriate hearing facts upon which a reviewing court can conclude that trial counsel may have been ineffective. *Commonwealth v. Pettus*, 424 A.2d 1332, 1335 (Pa. 1981). Although Appellant attached certain documents to his amended PCRA petition, the PCRA court concluded that they fell short of establishing a genuine issue of material fact as to whether Appellant could have availed himself of an alibi defense. Additionally, as found by the PCRA court, given the overwhelming

independent evidence that Appellant committed the October 7th robbery, Appellant cannot establish how he was prejudiced by trial counsel's perceived ineffectiveness. ***Travaglia***, ***supra***.

In sum, because Appellant failed to raise a genuine issue of material fact regarding his claim of trial counsel's ineffectiveness, the PCRA court properly dismissed Appellant's amended PCRA petition without a hearing. ***Jordan***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/4/2014