J-S55019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN JAMES FOLEY, | |
| Appellant | No. 173 WDA 2015 |

Appeal from the PCRA Order Entered December 23, 2014
In the Court of Common Pleas of Indiana County
Criminal Division at No(s): CP-32-CR-0001170-2007

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED OCTOBER 14, 2015**

Appellant, Kevin James Foley, appeals from the December 23, 2014 order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises three claims of ineffective assistance of counsel (IAC). After careful review, we affirm.

At the conclusion of an eight-day jury trial in March of 2009, Appellant was convicted of the first-degree murder of Dr. John Yelenic, a dentist living in Blairsville, Pennsylvania. At the time of the murder, Appellant was a Pennsylvania State Trooper, and was involved in a romantic relationship with Dr. Yelenic's estranged wife.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On June 1, 2009, the trial court sentenced Appellant to life imprisonment without the possibility of parole. Appellant timely appealed, and after this Court affirmed his judgment of sentence in a published opinion, our Supreme Court denied his subsequent petition for allowance of appeal. *See Commonwealth v. Foley*, 38 A.3d 882 (Pa. Super. 2012), *appeal denied*, 60 A.3d 535 (Pa. 2013).

On December 30, 2013, Appellant filed a timely, *pro se* PCRA petition. Counsel was appointed and an amended petition was filed on Appellant's behalf raising several IAC claims regarding his trial counsel, Richard Galloway, Esq. Appellant also filed a motion to recuse the Honorable William J. Martin, President Judge of the Court of Common Pleas of Indiana County, from presiding over the post-conviction proceedings.[1] On October 29, 2014, Judge Martin issued an order and opinion denying Appellant's motion to recuse. Appellant's PCRA case proceeded to an evidentiary hearing on December 2, 2014, at which Appellant and Attorney Galloway testified. On December 22, 2014, Judge Martin issued an opinion and order denying Appellant's PCRA petition. That order was entered on the lower court's docket on December 23, 2014.

Appellant filed a timely notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of

---

[1] Judge Martin also presided over Appellant's trial.

errors complained of on appeal.  Herein, Appellant raises the following three

IAC claims for our review:

> I. Whether Judge William J. Martin erred in finding trial counsel did not provide ineffective assistance of counsel when trial counsel failed to develop the defense's theory of the case that another person was the murderer[?]
>
> II. Whether Judge William J. Martin erred in finding trial counsel did not provide ineffective assistance of counsel when trial counsel failed to object to the Prosecution's closing argument, specifically when the prosecutor shifted the burden of proof to [Appellant] despite knowing that such evidence existed and was not admissible during trial[?]
>
> III. Whether Judge William J. Martin erred in finding trial counsel did not provide ineffective assistance of counsel when trial counsel failed to motion for the recusal of Judge William Martin despite knowing that reason existed to do so[?]

Appellant's Brief at 2-3.[2]

We begin by noting that "[t]his Court's standard of review from the

grant or denial of post-conviction relief is limited to examining whether the

lower court's determination is supported by the evidence of record and

whether it is free of legal error."  ***Commonwealth v. Morales***, 701 A.2d

516, 520 (Pa. 1997) (citing ***Commonwealth v. Travaglia***, 661 A.2d 352,

356 n.4 (Pa. 1995)).  Where, as here, a petitioner claims that he received

ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel

---

[2] The Commonwealth has not filed a brief in this case, despite this Court's granting it two extensions of time within which to do so.

- 3 -

which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

In his first issue, Appellant contends that Attorney Galloway acted ineffectively by not sufficiently developing the defense that Dr. Yelenic's neighbor, Thomas Uss, murdered Dr. Yelenic because the doctor was purportedly having an affair with Mr. Uss' wife, Melissa. Appellant maintains that counsel should have called Mr. Uss to the stand "to inquire into his knowledge of the alleged affair between Dr. Yelenic and [Mr. Uss'] wife." Appellant's Brief at 12. Appellant also avers that Attorney Galloway was ineffective for not specifically asking Melissa Uss, on cross-examination, whether she and Dr. Yelenic had an affair.

Appellant further claims that had Attorney Galloway elicited testimony from Thomas and/or Melissa Uss to prove that Mr. Uss knew of the affair, then other evidence of the affair would have become admissible, namely the

testimony of Bette Morris, a third neighbor of Dr. Yelenic.[3]  In ruling on Appellant's direct appeal, this Court explained the proposed testimony of Ms. Morris, and the trial court's ruling thereon, as follows:

> During the criminal investigation of this case, Bette Morris said to a law enforcement officer that on two occasions she had observed Dr. Yelenic engaged in intimate acts with his next door neighbor, Melissa Uss. According to [Appellant's] counsel, if placed on the stand, Bette Morris would deny that she had ever made such observations, and then counsel would treat her as a hostile witness and impeach her with the statement she gave police. **See** N.T., March 17, 2009, at 135. When the Commonwealth objected that this evidence was irrelevant, [Appellant's] counsel explained that it was intended to show that Melissa Uss's husband had a motive to kill Dr. Yelenic: "[A] jury could infer that somebody who was having a romantic affair with Dr. Yelenic, the husband might be inclined to do something and that is a fair inference from that." **Id.,** at 137. However, when the trial court asked whether the defense had any evidence that Melissa Uss's husband knew of the supposed intimate acts, defense counsel conceded that he had no such evidence. **See id.** According to the defense, Bette Morris's observations were made when Mr. Uss was in the military and not at home. **See id.,** at 135.
>
> The trial court excluded the testimony of Bette Morris on the grounds that it was "a mere suggestion of motive and therefore irrelevant and inadmissible." Opinion and Order of Court, November 4, 2009, at 10.

**Foley**, 38 A.3d at 886.[4]

_____

[3] While Appellant refers to this individual as "Betty Morris," we will refer to her as Bette Morris, which is consistent with the notes of testimony.  **See** N.T. Trial, 3/17/09, at 134, 141.

[4] On direct appeal, this Court upheld the trial court's exclusion of Ms. Morris' testimony, reasoning that "[t]he trial court acted within its discretion in rejecting the testimony as irrelevant because [Thomas Uss] had no knowledge of the intimate contact." **Foley**, 38 A.3d at 887.

Appellant now asserts that he was prejudiced by Attorney Galloway's failure to elicit testimony from Thomas and/or Melissa Uss to prove that Mr. Uss knew about the affair, which would have then made Ms. Morris' testimony admissible. Because counsel did not follow this course, Appellant maintains that "the jury was not presented [with] a full picture of the defense's theory of the case[, and,] without such a picture, [Appellant] was convicted of first[-]degree murder." Appellant's Brief at 13.

After carefully reviewing the record, we conclude that Attorney Galloway had a reasonable basis for not calling Mr. Uss to the stand, and for not questioning Melissa Uss about the purported affair. At the PCRA hearing, Attorney Galloway testified that Mr. Uss "was clearly [a] hostile" witness, and counsel decided not to call him to the stand because "it was unlikely that he would … say that he killed [Dr.] Yelenic." N.T. PCRA Hearing, 12/2/14, at 40. Counsel continued, "We thought he would deny everything that we wanted to prove." *Id.* Counsel offered a similar rationale for not questioning Melissa Uss about her alleged affair, stating that he was "sure she would have said that she did not have an affair…." *Id.* at 39. Counsel elaborated that he "did not want to ask a clearly hostile witness a question which would give her an easy way to say that she wasn't having an affair even if she was." *Id.*

Attorney Galloway also explained that, because the defense had no admissible evidence that Melissa Uss was having an affair with Dr. Yelenic, or that Thomas Uss knew about that infidelity, the defense's strategy was to

infer these facts to the jury, in the hope of raising a reasonable doubt about Appellant's guilt. *See id.* at 37-38. Counsel testified that he made "a judgment call" at the time of trial that "raising [the] inference [of an affair] was better than having Mr. Uss or Mrs. Uss get on the stand and deny it." *Id.* at 43.

In his brief to this Court, Appellant does not discuss Attorney Galloway's testimony at the PCRA hearing or challenge the reasonableness of counsel's strategy. Nevertheless, we conclude that it was sound. Attorney Galloway rationally feared that Melissa Uss would explicitly deny having an affair with Dr. Yelenic, and/or that Thomas Uss would deny knowing about that alleged affair. Attorney Galloway reasonably concluded that such explicit denials would hamper the defense's attempt to infer that Thomas Uss killed Dr. Yelenic after discovering his wife's affair. Consequently, Appellant has failed to convince us that Attorney Galloway acted ineffectively in this regard.

In Appellant's next IAC claim, he contends that Attorney Galloway was ineffective for not objecting to the following portion of the Commonwealth's closing argument:

> [The defense] suggested that because Melissa Uss and John Yelenic were neighbors and sometimes talked, appeared to be friendly and occasionally talked on the porch together that that must have meant something. It must have been more than just that. Where is the evidence of that? I mean, let's be fair here. It is their accusation. They had Melissa Uss on the stand and they never asked her that. How fair is that? How decent is that? That didn't stop them from suggesting it to you. Why at least not ask her that[,] but on the basis of some conversation

on a porch they are going to suggest to you that it made Thomas Uss commit a crime and there is no evidence of that to you whatsoever[."]

PCRA Court Opinion and Order (PCOO), 12/23/14, at 5 (quoting N.T. Trial, 3/18/09, at 194-195).

Appellant contends that Attorney Galloway should have objected to this portion of the Commonwealth's closing argument for two reasons. First, Appellant asserts that the Commonwealth's closing remarks "suggest[ed] to the jury that [Appellant] should have put forth additional evidence," thereby improperly shifting the burden of proof to Appellant. Appellant's Brief at 15. Second, Appellant avers that the Commonwealth's statements "impermissibly suggested to the jury that there was no other evidence of the affair[,]" despite that the Commonwealth knew about the inadmissible testimony of Bette Morris. *Id.* at 14. For these reasons, Appellant maintains that the Commonwealth's comments constituted "reversible error" and, as such, he was prejudiced by counsel's failure to object.

We disagree, as we conclude that Appellant has failed to prove the prejudice prong of the IAC test.

> To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'"

*Commonwealth v. Spotz*, 84 A.3d 294, 312 (Pa. 2014). The *Spotz* Court also emphasized that "[a] defendant [raising a claim of ineffective assistance

- 8 -

of counsel] is required to show **actual prejudice**; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.'" ***Id.*** at 315 (quoting ***Commonwealth v. Pierce***, 527 A.2d 973, 977 (Pa. 1987)) (emphasis added).

Here, in regard to the prejudice prong of the IAC test, Appellant simply stated that because the Commonwealth's closing amounts to "reversible error, [Appellant] was prejudiced." Appellant's Brief at 15. Appellant offers no discussion of how the Commonwealth's closing remarks could have reasonably impacted the jury's verdict, or why the results of the trial would have been different but for those statements. Consequently, Appellant has failed to prove that he suffered actual prejudice, especially in light of the strength of the Commonwealth's evidence supporting the jury's finding of guilt. This Court summarized that evidence in our opinion on direct appeal, as follows:

> At the time of the murder, [Appellant] was living with Dr. Yelenic's estranged wife. [Appellant] had expressed his hatred of Dr. Yelenic to numerous individuals—[Appellant] had said that he wished Dr. Yelenic would die, and on one occasion [Appellant] asked a fellow police officer to help him kill Dr. Yelenic. On three occasions, [Appellant] attempted to have Dr. Yelenic investigated and arrested for child abuse, and [Appellant] was frustrated by his lack of success.

> [Appellant] had an opportunity to commit the crime. At the approximate time of the murder, he was driving from a hockey game in Delmont to his home in Indiana, which took him past Blairsville, where Dr. Yelenic resided.

[Appellant's] DNA profile was consistent with DNA found under Dr. Yelenic's fingernail, and the most conservative estimate of the likelihood that someone else would possess a consistent profile was one in 13,000. On the night before the murder, [Appellant] had no abrasion on his forehead, but on the morning following the murder he had an injury on his forehead described by three eyewitnesses as "a fingernail scratch" and by others as a cut that appeared to be "fresh."

\*\*\*

Dr. Yelenic was slashed by a sharp instrument, and [Appellant] was known by his colleague to be a "knife guy" who habitually flicked open and shut a knife that he carried with him. In fact, [Appellant] once accidentally sliced open a supervisor's pair of pants in the groin area when he was walking past him. When informed of Dr. Yelenic's death shortly after the discovery of the murder, [Appellant] was unemotional, expressed no curiosity about the nature or cause of death, and only asked which law enforcement agency was in charge of the investigation. After the murder, [Appellant] stopped playing with his knife….

**Foley**, 38 A.3d at 891-92 (2012) (footnote omitted).

We also discussed shoeprint evidence that was introduced by the Commonwealth at Appellant's trial, stating:

At trial, the Commonwealth introduced expert testimony from an FBI forensic examiner that the shoeprints at the crime scene apparently were left by an Asics brand running shoe with the model name "Gel Creed" or "Gel Creed Plus." The FBI forensic examiner noted that he could not state his opinion with one hundred percent certainty because the FBI database does not contain reference information for every shoe manufactured in the world.

The Commonwealth also introduced testimony from Terry Schalow, a product manager for Asics America Corporation. He testified that the shoeprint was left by an Asics Gel Creed, Gel Creed Plus, or a knockoff of this type of shoe. The size was between ten and twelve and a half. Only about 25,000 Gel Creed shoes were sold in the United States. Importantly, [Appellant] ordered a size ten Gel Creed from Asics in August 2003.

*Id.* at 890 (citations to the record omitted). This Court also noted in *Foley* that after the murder, Appellant "said that he did not remember what happened to the size 10 pair of Gel Creed shoes he ordered in 2003[,]" *id.* at 892, and he "started wearing Nike brand shoes instead of Asics." *Id.* at 892.

Considering the totality of this evidence, and Appellant's failure to present any argument regarding how the at-issue remarks by the Commonwealth impacted the jury's verdict, we conclude that Appellant has not demonstrated that he suffered 'actual prejudice' due to Attorney Galloway's failure to object to the Commonwealth's closing argument. Accordingly, the PCRA court did not err in denying his second assertion of counsel's ineffectiveness.

In his third and final IAC claim, Appellant contends that Attorney Galloway acted ineffectively by not filing a motion seeking the recusal of Judge Martin from presiding over Appellant's trial. We begin our assessment of this claim by noting the standard for recusal, set forth by our Supreme Court as follows:

> It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner.... The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine

public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

*Commonwealth v. White*, 910 A.2d 648 (Pa. 2006) (quoting *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998) (citations omitted)).

Here, Appellant claims that trial counsel should have moved for the recusal of Judge Martin because the judge had an "appearance of bias" based on the following facts:

> [Appellant] was employed as a Pennsylvania State Trooper stationed out of the Indiana [County] Barracks prior to and during his trial. Prior to his prosecution and trial, [Appellant] had testified in the Judge's courtroom and had attended several of the same social functions as Judge Martin. In addition, during the discovery phase of his defense, a notation was discovered in [Appellant's] personnel file that indicated a disagreement over the handling of some of [Appellant's] cases which were in front of Judge Martin.

Appellant's Brief at 15.

Appellant also avers that Attorney Galloway erred by not moving for Judge Martin's recusal where counsel was aware of an incident in which Appellant left Judge Martin's courtroom before being dismissed, which allegedly angered Judge Martin. At the PCRA hearing, Appellant testified that after this incident, he was "reprimanded by his supervisor[,]" who told Appellant that Judge Martin was unhappy with him "and [the judge] wanted to issue a bench warrant for [Appellant's] arrest and see what happened." Appellant's Brief at 17 (quoting N.T. PCRA Hearing at 10). Appellant also

points out that Attorney Galloway testified at the PCRA hearing that he heard from other attorneys in Indiana County "that Judge Martin didn't like [Appellant] or that [Appellant] had really ticked him off…." N.T. PCRA Hearing at 43. Based on these facts, Appellant claims that Judge Martin had an appearance of bias against Appellant and, therefore, Attorney Galloway should have moved for the judge's recusal.

The PCRA court, *i.e.* Judge Martin, concluded that this claim lacked arguable merit. We agree. As noted *supra*, prior to Judge Martin's presiding over the PCRA hearing, Appellant's PCRA counsel filed a motion to recuse, asserting the same grounds for Judge Martin's recusal as Appellant claims Attorney Galloway should have raised prior to trial. Judge Martin denied that motion and, in an accompanying opinion (hereinafter referred to as "recusal opinion"), Judge Martin set forth the following reasons for doing so:

> The [c]ourt finds no merit to [Appellant's] claim that simply because [Appellant] had appeared in front of the [c]ourt as a witness, or that [Appellant] and the [c]ourt were present at the same social functions, that recusal as to the Motion for Post-Conviction Collateral Relief is required.
>
> ***
>
> A judge is not disqualified from hearing cases merely because he presided over prior cases involving a defendant. **Commonwealth v. Bryant**, … 476 A.2d 422 ([Pa. Super.] 1984). The [c]ourt finds that this holding is equally applicable to a witness who has previously appeared before the [c]ourt. The [c]ourt therefore finds that the Motion for Recusal for this reason is denied.
>
> As to [Appellant's] claim that the [c]ourt should recuse because the [c]ourt and [Appellant] were present in the same place at the same time outside the [c]ourthouse setting is totally without

merit. To so hold would require judges to refrain from attending any function or interacting with society because a potential defendant may be present. The [c]ourt will not recuse based upon this claim.

[Appellant's] final claim is that because of the notation [regarding Appellant's leaving the judge's courtroom without permission] in [Appellant's] personnel file, the [c]ourt should recuse.

\*\*\*

While the [c]ourt was unhappy that [Appellant] left in violation of his subpoena before his case was heard, … [a] court['s] expression of impatience, dissatisfaction, annoyance or even anger are not sufficient grounds for recusal if the [c]ourt feels that it can continue and be impartial, fair and unbiased. [*Liteky*] *v. U.S.*, 510 U.S. 540, [555-556] … (1994); *Commonwealth v. Kearney*, [92 A.3d 51, 61 (Pa. Super. 2014)]. The [c]ourt can continue in this matter in an impartial, fair and unbiased manner.

Recusal Opinion, 10/29/14, at 2-4 (one citation omitted).

Judge Martin's discussion in the recusal opinion convinces us that Appellant's underlying claim that the judge's recusal was warranted lacks arguable merit. The cases cited by Judge Martin support the legal conclusions he reaches. Appellant does not present any legal authority to support his contrary arguments.

Additionally, the record also demonstrates that Attorney Galloway had a reasonable basis for not filing a motion to recuse. In regard to this prong of the IAC test, Appellant states only that, "[g]iven the above [legal] standard [for recusal], and the severity of the matter at hand, trial counsel should have asked for the recusal of Judge Martin and lacked any reasonable basis for not bringing the matter to the Court's attention." Appellant's Brief

at 17. However, at the PCRA hearing, Attorney Galloway testified that the rumors about Judge Martin's not liking Appellant were "always vague." N.T. PCRA Hearing at 43. Counsel elaborated:

> It was never Judge Martin said to me I don't like, it was never a lawyer came up to me and said Mr. Galloway, Judge Martin said to me I don't like [Appellant] or I want to do anything and et cetera. It was always they had heard or statements like everybody knows that Judge Martin doesn't like [Appellant]. Well, that is all short of useable evidence.

*Id.* Attorney Galloway did indicate that, in support of a motion to recuse, he could have presented Appellant's testimony regarding the incident where Appellant left Judge Martin's courtroom without permission, which allegedly angered the judge. *Id.* at 44. However, counsel testified that he "didn't think that was by itself grounds for a recusal motion." *Id.*

Attorney Galloway's testimony demonstrates that he had a reasonable basis for not filing a recusal motion. Counsel testified that the only admissible evidence in support of such a motion would have been Appellant's testimony about the courtroom incident that purportedly angered Judge Martin. Appellant does not offer any discussion of other evidence that could have been admitted, or why Attorney Galloway was incorrect that Appellant's testimony, alone, would have been enough to warrant Judge Martin's granting a recusal motion. Thus, Appellant has failed to prove that Attorney Galloway's reason for not filing a recusal motion was unreasonable.

Because each of Appellant's three IAC claims fails, we conclude that the PCRA court did not err in denying Appellant's petition for post-conviction relief.

Order affirmed.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Strassburger files a concurring memorandum in which President Judge Emeritus Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015