J-S39009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAMMERON L. MCKENZIE, | |
| Appellant | No. 1188 WDA 2016 |

Appeal from the PCRA Order Entered July 14, 2016
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000384-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                        **FILED JULY 28, 2017**

Appellant, Kammeron L. McKenzie, appeals from the post-conviction court's July 14, 2016 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, in which he raised several claims of ineffective assistance of counsel (IAC).  We affirm.

This Court summarized the procedural and factual history of Appellant's case in our disposition of his direct appeal:

> A jury found [Appellant] guilty of possession of a controlled substance (cocaine) with intent to deliver ("PWID"),[1] possession of a controlled substance,[2] possession of a small amount of marijuana,[3] carrying firearms without a license,[4] persons not to possess a firearm[5] and receiving stolen property.[6]  The trial court sentenced [Appellant] to an aggregate term of 5-10 years' imprisonment.[7]

---

[*] Retired Senior Judge assigned to the Superior Court.

…

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(31).

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. § 6105(a)(1).

[6] 18 Pa.C.S. § 3925(a).

[7] On October 30, 2013, the trial court sentenced [Appellant] to an aggregate term of 7-14 years' imprisonment. [Appellant] filed a timely post-sentence motion seeking modification of his sentence. He subsequently filed supplemental post-sentence motions which included challenges to the sufficiency and weight of the evidence. On January 30, 2014, the trial court granted [Appellant's] motion for modification of sentence and denied the remaining post-sentence motions. On February 28, 2014, the trial court resentenced [Appellant] to an aggregate of 5-10 years' imprisonment.

…

[Appellant] and his co-defendant, Anthony Slappy, were tried together. The trial court accurately recounted the evidence adduced during the … trial as follows:

On December 1, 2012 at approximately 1:30 a.m., Officer David Johnson of the City of Beaver Falls Police Department was on patrol in a marked police vehicle when he observed what he believed to be Anthony Slappy pumping gas into a white Cadillac at the A-Plus gas station in Beaver Falls. Officer Johnson also observed that another individual he could not identify from that distance was in the passenger seat of the Cadillac. After pumping the gas, the individual that appeared to be Slappy entered the driver's side of the Cadillac and exited the gas station parking lot.

As the Cadillac turned onto Eighth Avenue and then to 26th Street, Officer Johnson further observed that the taillights

- 2 -

of the vehicle were not illuminated. Officer Johnson then activated the overhead lights of his patrol vehicle in an attempt to initiate a traffic stop. According to Officer Johnson, the driver of the Cadillac started to pull toward the curb but ultimately drove back toward the middle of the road and continued driving. As a result, Officer Johnson activated his siren and notified dispatch that the driver was refusing to stop. The driver of the Cadillac disregarded the siren and continued traveling south on Tenth Avenue. As they approached the intersection of Tenth Avenue and 25th Street, it appeared to Officer Johnson that the driver attempted to make a left turn toward Ninth Avenue, but Captain Martin of the Beaver Falls Police Department had arrived to intercept the driver at Ninth Avenue. The driver continued on Tenth Avenue through a 'Do Not Enter' sign and onto a one-way street. It again appeared to Officer Johnson that the driver attempted to turn left at the intersection of 24th Street and Tenth Avenue, but the driver was again blocked by Captain Martin's police vehicle. The driver continued traveling south on Tenth Avenue, and, at the intersection of Tenth Avenue and 23rd Street, Officer Johnson observed, with the aid of his spotlight, the passenger moving around and throwing a white object out the window. According to Officer Johnson, the road on which the driver was traveling ended, and the driver was forced to turn left and eventually stop because he was intercepted by Captain Martin.

After stopping the vehicle, Officer Johnson and Captain Martin approached the Cadillac with their weapons drawn. Officer Johnson approached the passenger side of the Cadillac and recognized [Appellant] as the passenger of the vehicle. According to Officer Johnson, [Appellant] was leaning to the left and over his seat toward the floor of the Cadillac. Officer Johnson ordered [Appellant] to show his hands, and, after initially refusing to comply, [Appellant] raised his hands. Knowing that there was an active warrant for [Appellant]'s arrest, Officer Johnson removed [Appellant] from the inside of the Cadillac and took him to the back of the vehicle in order to conduct a search for weapons. While doing so, Officer Johnson observed a white rock substance on the window of the Cadillac. During the frisk, [Appellant] stated that he had 'a little bit of

weed.'  The search uncovered a small baggy of suspected marijuana, $640, and a cell phone. After Captain Martin removed the driver who was determined to be Anthony Slappy from the Cadillac, the officers discovered an unloaded .45 caliber Taurus 24/7 Pro firearm on the driver's side of the vehicle. Officer Johnson described the location of the firearm as follows:

> [W]e did observe that there was a firearm also under the, what would be the driver's seat post, next to the hump.  So if I would be sitting in the driver's seat, there, like, the bolts where the seat is bolted to the floor, there's a firearm that would be slid down on the side of the hump right against that post.

The magazine for the firearm was also located on the driver's side of the vehicle.  The officers also found another cell phone and a 45 caliber bullet 'on the passenger floorboard where [Appellant] was seated[].'  In addition, white residue that was later determined to be cocaine was found in the vehicle.

After [Appellant] and Slappy were arrested and secured for transport, Officer Johnson and Captain Martin went to the intersection of Tenth Avenue and 23rd Street where they previously observed a white rock substance thrown from the passenger side window of the Cadillac.  Upon arriving at that location, the officers found and collected a plastic baggie of suspected crack cocaine as well as several solid pieces of suspected crack cocaine of varying sizes. These items as well as the evidence obtained from the Cadillac were turned over to the police department's record custodian, Detective Kevin Burau.

Once the officers returned to the station, the suspected marijuana and cocaine were tested, yielding positive results for the presence of marijuana and cocaine.  The officers also determined that the Cadillac was registered to Slappy.  After the Cadillac was impounded, the officers obtained a search warrant for the Cadillac.  The subsequent execution of the search warrant revealed additional white, rock-type substances from both the driver and passenger sides of the vehicle.  Using the serial number on the Taurus 24/7 Pro firearm, the officers conducted a search of the National Crime Information

Center database, which revealed that someone in Independence Township had reported that the firearm had been stolen. The officers also determined through an inquiry to the Pennsylvania State Police Firearms Unit that neither [Appellant] nor Slappy had a valid license to carry a firearm concealed. The firearm as well as the recovered ammunition, the suspected controlled substances, and DNA samples from [Appellant] and Slappy were subsequently transferred to the Pennsylvania State Police for further testing.

Trial Court Opinion, pp. 1-4.

Several additional facts bear mention. Joseph Kukosky, a forensic DNA scientist with the Pennsylvania State Police Crime Lab, testified that swabs taken from the firearm contained DNA that matched [Appellant's] DNA profile. In addition, both [Appellant] and Slappy testified in their own defense. [Appellant] admitted to possessing the firearm in Slappy's vehicle but testified that Slappy had given it to him. On the other hand, Slappy testified that he never possessed the firearm and claimed that [Appellant']s testimony was false. [Appellant] admitted possessing cocaine but claimed it was for personal use. The Commonwealth, however, demonstrated that [Appellant] possessed 10 grams of cocaine mostly in rock form but had no pipe with which to ingest cocaine. Additionally, [Appellant] was unemployed at the time of his arrest, but he carried $640.00 in his pocket and possessed two mobile cellular phones.

*Commonwealth v. McKenzie*, No. 527 WDA 2014, unpublished memorandum at 1-6 (Pa. Super. filed January 9, 2015) (some footnotes omitted).

Appellant filed a timely direct appeal from his judgment of sentence, and after this Court affirmed, *see id.*, our Supreme Court denied his subsequent petition for allowance of appeal. *See Commonwealth v. McKenzie*, 125 A.3d 776 (Pa. 2015). Appellant then filed a timely, *pro se* PCRA petition on October 30, 2015. Counsel was appointed and he filed an

amended petition on Appellant's behalf raising various IAC claims. A PCRA hearing was conducted on May 2, 2016, at which Appellant, and his trial and direct appeal counsel, Mitchell Shahen, Esq., both testified. On July 14, 2016, the PCRA court issued an order and opinion denying Appellant's petition.

Appellant filed a timely notice of appeal, as well as a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 19, 2016, the PCRA court issued a responsive opinion, relying in large part on the rationale set forth in its July 14, 2016 opinion denying Appellant's petition. In Appellant's brief to this Court, he presents the following three issues for our review:

> I. Whether there was ineffective assistance of counsel in failing to challenge on appeal the sufficiency of the evidence on receiving stolen property - firearm[?]
>
> II. Whether there was ineffective assistance of counsel in failing to request the trial court to properly and adequately charge the jury and/or failing to object to the trial court improperly and inadequately charging the jury regarding (a) receiving stolen property - guilty knowledge, (b) constitutional limits on using inferences in criminal cases, (c) direct and circumstantial evidence - additional request, and (d) unanimity required for one of alternative theories of guilt of receiving stolen property[?]
>
> III. Whether there was ineffective assistance of counsel in failing to object to the exhibits of experts being in possession of the jury during deliberations[?]

Appellant's Brief at 4 (unnecessary capitalization omitted).

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's

- 6 -

determination is supported by the evidence of record and whether it is free

of legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997)

(citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims that he received ineffective assistance of

counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland***[ ***v. Washington***, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry. ***See*** [***Commonwealth v.***] ***Pierce***, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali***, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Simpson***, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. ***See Ali, supra***. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Colavita***, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceedings would have been different." ***Commonwealth v. King***, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali***, 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland***, 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant first argues that Attorney Shahen was ineffective for failing to challenge, on direct appeal, the sufficiency of the evidence to prove the 'guilty knowledge' element of his receiving stolen property conviction. More specifically, Appellant stresses that to convict an individual of receiving stolen property, the Commonwealth must prove, *inter alia*, that the person possessed the property "knowing that it has been stolen, or believing that it has probably been stolen…." 18 Pa.C.S. § 3925(a). Appellant contends that in this case, there was insufficient evidence to prove that he knew the property at issue - *i.e.*, the firearm - was stolen, or that he believed it was probably stolen. According to Appellant, there was no evidence linking him to the firearm, other than his presence in the vehicle in which it was found. He also argues that the fact that the firearm was stolen three years prior to his arrest supported that he did *not* know that it was stolen. Thus, Appellant asserts that, had Attorney Shahen raised these sufficiency-of-the-evidence arguments on direct appeal, this Court would have reversed his receiving stolen property conviction.

In rejecting this claim, the PCRA court concluded both that Appellant's sufficiency challenge was meritless, and that Attorney Shahen had a reasonable basis for not raising this issue on direct appeal. Because we agree, for the reasons stated *infra*, with the court's determination on the reasonable basis prong, we need not decide whether Appellant's sufficiency claim has arguable merit, or whether Appellant was prejudiced by counsel's conduct. ***See Simpson***, 66 A.3d at 260.

In regard to the reasonable basis prong, we begin by noting:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. As the Commonwealth accurately states, this cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." Our evaluation of counsel's performance is "highly deferential."

***Commonwealth v. Williams***, 141 A.3d 440, 463 (Pa. 2016), (internal citations omitted).

In concluding that Attorney Shahen had a reasonable basis for not raising a sufficiency challenge to the 'guilty knowledge' element of Appellant's receiving stolen property conviction, the PCRA court reasoned:

> The [Pennsylvania] Supreme Court's decision in ***Williams*** is relevant to this [c]ourt's [o]pinion with regard to prior counsel's reasonable strategic basis. In ***Williams***, our Supreme Court held:
>
> > It is true that "arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of

- 9 -

appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief." [*Commonwealth v.*] *Bracey*, 795 A.2d [935,] 950 [(Pa. 2001)] (citing *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). "Appellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 950–51 (quoting [*Smith v.*] *Robbins*, 528 U.S. [259,] 288 [(2000)]...).

*Id.* at [471]. ... [Attorney Shahen] indicated at the evidentiary hearing that he had considered[,] in deciding not to raise on direct appeal the issue of sufficiency of the evidence on [Appellant's] receiving stolen property charge, case law and a quote by Judge Aldisert that too many issues on appeal detracts from the process of review. The most recent applicable Pennsylvania Supreme Court case at the time [of counsel's decision], which this [c]ourt cited in its [July 14, 2016 o]pinion, was the case of *Com[monwealth] v. Jones*, ... 815 A.2d 598 ([Pa.] 2002). *Jones* held that counsel may reasonably forego even claims with merit as part of a strategic decision. *Id.* at ... 613 [(stating that, "as the U.S. Supreme Court has recognized, appellate counsel is not constitutionally obliged to raise every conceivable claim for relief. Counsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief") (citation omitted)]. The decision in *Jones* was..., however, only a plurality opinion. *Williams*, on the other hand, now commands a majority of the Court and so is binding precedent which further supports the [c]ourt's analysis that [Attorney Shahen's] decision not to raise [this specific sufficiency] issue on appeal was part of a reasonable strategic decision which defeats [Appellant's] claim of ineffective assistance. Indeed, given the fact that [Appellant's] aggregate sentence in this case would not have been affected even if [he] had been successful on appeal on that issue,[1] the [c]ourt can well understand [Attorney Shahen's] strategy in

---

[1] Appellant received a concurrent term of incarceration for his receiving stolen property offense.

- 10 -

deciding not to pursue that claim on appeal where it might …
only detract from more important issues.

PCRA Court Opinion, 9/19/16, at 3-4 (some citations omitted).

In attacking the PCRA court's rationale, Appellant claims that Attorney Shahen never testified at the PCRA hearing that he made a strategic decision not to include the at-issue sufficiency claim on direct appeal. The same was true in **Williams**, and led to our Supreme Court's concluding that appellate counsel in that case did **not** express a reasonable basis for failing to raise a particular claim on appeal. **See Williams**, 141 A.3d at 471 (concluding that counsel failed to state a reasonable basis where "appellate counsel did not testify that he made a reasoned decision to exclude [the] particular claim … in an effort to winnow down his arguments to those that had the highest chance for success on appeal"). Instead, the attorney in **Williams** "testified that he had no independent recollection regarding the issues he raised on appeal or why he chose the issues he raised…." **Id.**

We disagree with Appellant that Attorney Shahen's PCRA hearing testimony was similar to the attorney's testimony in **Williams**. Attorney Shahen specifically testified that when deciding on what issues to present in Appellant's direct appeal, he recalled considering the following, oft-quoted remark by Judge Ruggiero Aldisert:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors.... [W]hen I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a

- 11 -

presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

***Commonwealth v. Showers***, 782 A.2d 1010, 1016 (Pa. Super. 2001) (internal citations omitted). ***See also*** PCRA Hearing, 5/2/16, at 23 (counsel's testifying that he considered the above stated quote by Judge Aldisert in deciding what issues to raise in Appellant's appeal).

Attorney Shahen also testified that in his experience, challenges to the sufficiency of the evidence are "hard to win." PCRA Hearing at 24. Nevertheless, he **did** challenge the sufficiency of the evidence to prove the possessory element of Appellant's receiving stolen property and firearm convictions on direct appeal.[2] Counsel explained that he chose to raise this sufficiency-of-the-evidence claim because the primary defense at trial was that Appellant did not possess the firearm found in the car. ***Id.*** at 26. Considering the Judge Aldisert quote, Attorney Shahen did not want to raise an additional claim that Appellant did not know the gun was stolen. ***Id.*** at 23, 25.

_____

[2] Attorney Shahen also raised two other issues on direct appeal, a challenge to the weight of the evidence to support Appellant's PWID conviction, and a claim that the court erred by qualifying Robert Kukosky, of the DNA crime lab, as an expert witness. ***See Williams***, No. 527 WDA 2014, unpublished memorandum at 6. Appellant does not argue that these claims, or the sufficiency challenge to the possessory element of his receiving stolen property and firearm offenses, were weaker than a challenge to the sufficiency of the evidence to prove the 'guilty knowledge' element of receiving stolen property.

In view of this testimony, we conclude that the record supports the PCRA court's determination that Attorney Shahen strategically chose to omit, on direct appeal, a sufficiency-of-the-evidence claim pertaining to Appellant's knowledge that the gun was stolen. We further conclude that *Jones* and *Williams* support the PCRA court's decision that Attorney Shahen's strategy was reasonable. Thus, Appellant's first IAC claim is meritless.

Next, Appellant takes issue with Attorney Shahen's failure to object to, or request, four specific jury instructions. Notably, in three of Appellant's jury-instruction claims, he argues that Attorney Shahen was ineffective for not requesting specific instructions that Appellant's *current counsel has created*. We fail to see how we could deem Attorney Shahen ineffective for not requesting instructions that are the product of current counsel's imagination. In any event, however, we conclude that the well-reasoned opinion of the Honorable Kim Tesla of the Court of Common Pleas of Beaver County accurately disposes of Appellant's arguments that Attorney Shahen acted ineffectively by failing to request certain jury instructions. *See* PCRA Court Opinion, 7/14/16, at 21-25. Accordingly, we adopt Judge Tesla's opinion as our own, and conclude that Appellant's second IAC issue is meritless on that basis.

Lastly, Appellant contends that Attorney Shahen was ineffective for not objecting when the trial court permitted the jury to review certain expert reports during deliberations. Appellant focuses his argument on one

- 13 -

particular report, the expert report regarding the DNA found on the gun in this case. Essentially, Appellant avers that allowing the jury to possess this report - which contained "astronomical percentages that [Appellant's] DNA was on the stolen firearm" - weakened his defense that Slappy possessed the firearm. Appellant's Brief at 31 ("Gaining an admission [during the cross-examination of the DNA expert] that [Slappy] could have possessed the firearm even though his DNA was not on it did not, and could not, address the finding that [Appellant's] DNA was found on the firearm. Allowing the jury to possess the DNA Report with those astronomical percentages of [Appellant's] DNA on it and therefore possessing it cannot be justified as effective under any circumstance.").

Appellant's argument is unconvincing. At trial, the DNA expert testified that the probability that the DNA found on the gun matched someone other than Appellant was "1 in 110 sextillion within the Caucasian population[,]" and "[1] in 3.9 quintillion" out of the African-American population. N.T. Trial, 9/9/13, at 70. Thus, the jury heard the same numbers that were contained in the expert report that the court permitted them to review during deliberations. Moreover, Appellant conceded that his DNA was on the firearm, explaining that he had touched the weapon after Slappy threw it on his lap and he picked it up to throw it back. N.T. Trial, 9/9/13, at 175-177. In closing arguments, Attorney Shahen again acknowledged that Appellant's DNA was on the weapon, and argued that the DNA was there because Appellant had touched the weapon when throwing it

back at Slappy.  *See* N.T. Trial, 9/10/13, at 62.   Counsel further stressed that, on cross-examination, the DNA expert had admitted that "the lack of DNA [from Slappy] did not mean that … Slappy[] did not handle the firearm." *Id.*

In light of this testimony and argument by Attorney Shahen, we fail to see how Appellant was prejudiced by the jury's having, during deliberations, a report that stated the 'astronomical percentages' regarding the probability that it was Appellant's DNA on the firearm.  The jury heard those same numbers during the DNA expert's testimony, and Appellant conceded that his DNA was on the weapon.  Therefore, Appellant has not demonstrated he was prejudiced when Attorney Shahen did not object to the jury's reviewing the DNA expert's report during deliberations.

In sum, we agree with the PCRA court that Appellant's three IAC claims are meritless.  Accordingly, the court did not err in denying his petition.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/28/2017

- 15 -