J-S48031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIORGI JIGAURI | : | |
| | : | |
| Appellant | : | No. 1074 EDA 2024 |

Appeal from the PCRA Order Entered April 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002433-2020

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 20, 2025**

Appellant, Giorgi Jigauri, appeals from the post-conviction court's order

denying his timely-filed petition under the Post Conviction Relief Act (PCRA),

42 Pa.C.S. §§ 9541-9546. Appellant raises several claims of ineffective

assistance of trial counsel. After careful review, we affirm.

The facts of Appellant's case have been summarized, as follows:

On March 14, 2020, at approximately 2:45 a.m., in the parking
lot of the Philmont Shopping Center … where Golden Gates
Restaurant ("Golden Gates") [is] located, [Appellant] killed the
decedent…, Alexander Villaran, by stabbing him once in the back
with an eight-inch flip blade pocketknife. The knife punctured the
decedent's lung[], which caused the decedent to collapse and die
a short time afterward.

Prior to the incident, the decedent was with his girlfriend, Julia
Karatsoupa ("Karatsoupa"), and their friends, Mikal Smaugh
("Smaugh"), Kayla Laboy ("Laboy"), and Khalil Popal ("Popal") at
the Aladdin Hookah Lounge ("Aladdin")[.] … [Appellant] was also
at Aladdin at that time with Katherine Skylar ("Skylar"), Anna
Kovalev[a] ("Kovalev[a]"), and Artur Shnauderman
("Shnauderman"). At about 2:00 a.m., everyone began to leave

Aladdin and decided to go to Golden Gates' parking lot. Skylar drove Kovalev[a], Karatsoupa, and [Appellant], while the decedent drove Smaugh. Ryan Balceniuk ("Balceniuk"), a friend of Shnauderman, Skylar, Kovalev[a], and [Appellant], was not at Aladdin, but was dropped off at Golden Gates to meet up with Shnauderman.

Several months prior, [Appellant] had been in a sexual relationship with Karatsoupa, but they were no longer seeing each other at the time. When [Appellant] and Karatsoupa arrived at Golden Gates, they had an argument which ended with both [Appellant] and Karatsoupa exiting Skylar's vehicle[.] … Karatsoupa then approached the decedent and told him [Appellant] was being "smart" and disrespectful to her. …

The decedent then confronted [Appellant] and they began arguing. Their argument escalated to a [physical] fight after [Appellant] pushed the decedent. As [Appellant] and the decedent were fighting on[e] another, Smaugh became involved and began hitting [Appellant] as well. It was at this point that [Appellant's] friends noticed that [Appellant] was on the ground being hit by the decedent and Smaugh. Balceniuk, Shnauderman, and two other men ran over to get involved and the fight became a five on two.

After seeing [Appellant's] friends run over, Laboy and Karatsoupa also became involved in the fight. Karatsoupa attempted to put herself between the decedent and the others, but [she] returned to the car after being hit and pushed. While the decedent was on the ground, Laboy laid on top of him to protect him, but [Appellant's] friends continued to hit them for a moment before they stopped, and she was able to get up with the decedent. Immediately thereafter, everyone was separated and began walking back toward their cars.

As [Appellant] and the decedent returned to their cars, [Appellant] and the decedent began arguing again. As they were arguing, they began to approach one another again. As the decedent approached [Appellant], the decedent had his hand under his shirt and said something along the lines of "you're about to get fucked up" or "you're about to get killed." [Appellant] then pulled a knife out of his pocket, rushed in on the decedent as the decedent grabbed him, and thrust the knife from right to left toward the decedent[,] stabbing him once.

*Commonwealth v. Jigauri*, No. 119 EDA 2022, unpublished memorandum at 1-2 (Pa. Super. filed Oct. 17, 2022) (quoting Trial Court Opinion, 2/28/22, at 2-4 (record citations omitted)).

On March 22, 2020, the Commonwealth charged Appellant with third-degree murder (18 Pa.C.S. § 2502(c)) and possessing an instrument of crime (PIC) (18 Pa.C.S. § 907(a)). He waived his right to a jury trial and proceeded to a non-jury trial on October 4th and 5th of 2021. At the close thereof, the trial court convicted Appellant of voluntary manslaughter (18 Pa.C.S. § 2503(a)(1)) and PIC. On December 10, 2021, the trial court sentenced Appellant to an aggregate term of 3½ to 8 years' imprisonment. Appellant filed a timely post-sentence motion, which the trial court denied. He then filed a timely direct appeal, challenging the sufficiency and weight of the evidence to sustain his convictions. On October 17, 2022, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Jigauri*, 287 A.3d 867 (Pa. Super. 2022) (unpublished memorandum). He did not file a petition for allowance of appeal with our Supreme Court.

Instead, on November 9, 2023, Appellant filed a counseled PCRA petition. On January 17, 2024, the Commonwealth filed a motion to dismiss his petition. The PCRA court thereafter issued a Pa.R.Crim.P. 907 notice of its intent to deny Appellant's petition without a hearing. Although Appellant filed a response to the court's Rule 907 notice on March 7, 2024, the court issued an order on March 28, 2024, denying Appellant relief. Appellant filed a timely

notice of appeal, and he and the court complied with Pa.R.A.P. 1925. Herein, Appellant states the following issues for our review:

> I. Did the PCRA [c]ourt err in finding, without a hearing, that Appellant's rights under the Sixth and Fourteenth Amendment[s] of the U.S. Constitution and Article 1, [S]ec. 9 of the Pennsylvania Constitution were not violated when trial counsel ineffectively failed to object to the admission of prejudicial prior[-]bad[-]act evidence?
>
> II. Did the PCRA [c]ourt err in finding, without a hearing, that Appellant's rights under the Sixth and Fourteenth Amendment[s] of the U.S. Constitution and Article 1, [S]ec. 9 of the Pennsylvania Constitution were not violated when trial counsel failed to present evidence that could have established that Appellant's belief that he was in danger was objectively reasonable: Specifically, evidence that would have corroborated Appellant's testimony about threats made to him prior to the crime and forensic video expert testimony[?] The PCRA [c]ourt additionally erred in not granting Appellant's discovery request for the raw video footage which had been edited into a compilation videotape played at the trial, resulting in Appellant's inability to obtain expert review during the PCRA process.
>
> III. Did the PCRA [c]ourt err in finding, without a hearing, that Appellant's rights under the Sixth and Fourteenth Amendment[s] of the U.S. Constitution and Article 1, [S]ec. 9 of the Pennsylvania Constitution were not violated when trial counsel ineffectively failed to object to misstatements of material facts?
>
> IV. Did the PCRA [c]ourt err in not finding merit to the above claims and considering their cumulative impact[?]

Appellant's Brief at 7-8.

To begin, we recognize that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4

- 4 -

(Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

***Commonwealth v. Johnson***, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

In Appellant's first claim, he argues that his trial counsel acted ineffectively by not objecting to testimony by Julia Karatsoupa that Appellant had "pulled a knife on her a month prior to the crime." Appellant's Brief at 13 (quoting N.T., 10/4/21, at 158 (Karatsoupa's stating that Appellant "pulled a knife on me"); ***id.*** at 196 (Karatsoupa's testifying that "a month … before this happened, [Appellant] pulled a knife on me. And then, he decided to get upset and use the knife on someone that I love…")). Appellant insists that counsel should have objected to Karatsoupa's testimony about his prior bad acts because it met no exception for the admission of such evidence. ***See id.*** at

14-15 (quoting Pa.R.E. 404(b)(1) (stating that prior bad acts evidence is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"), and Pa.R.E. 404(b)(1)(2) (directing that prior-bad-acts evidence may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as long as "the probative value of the evidence outweighs its potential for unfair prejudice").

In rejecting this claim, the PCRA court, who also presided over Appellant's non-jury trial, reasoned:

> [Appellant's] claim that trial counsel was ineffective for failing to object to Karatsoupa's testimony that [Appellant] pulled a knife on her a month before this incident fails as [Appellant] cannot establish that he was prejudiced by trial counsel's failure to object. When rendering its verdict, this [c]ourt expressly stated that Karatsoupa was not a credible witness and that it was not considering the evidence as to whether or not [Appellant] pulled a knife on her a month beforehand. During his own testimony, [Appellant] admitted that he had been carrying a knife for three years prior to the incident. On re-cross examination, trial counsel used the fact that Karatsoupa never told anyone about [Appellant] pulling a knife on her to attack her credibility. As the statement was not considered by this [c]ourt in determining its verdict, [Appellant] cannot establish that he suffered prejudice as a result of trial counsel's failure to object. N.T.[,] 10/4/21[,] at 196[;] N.T.[,] 10/5/2021[,] at 49, 59-60, 142.

PCRA Court Opinion (PCO), 4/28/24, at 5.

Although acknowledging that the trial court did not find Karatsoupa credible, Appellant alleges that he was still prejudiced by the admission of her at-issue testimony because it

- 6 -

inferred that Appellant likely regularly carried a knife, that a knife was his preferred weapon[,] and that he would use it to threaten someone. This in turn improperly inferred that if he carried and had brandished a knife previously, it was more likely that he did so during this incident. It made … Appellant's defense, that he acted in self-defense, much less probable and/or credible.

Appellant's Brief at 18.

Appellant's argument is confusing and unconvincing. As the PCRA court noted, Appellant admitted that he had carried a knife for three years before the incident, and he also admitted that he stabbed the decedent with a knife on the night in question. **See** N.T., 10/5/21, at 47, 49. Moreover, the trial court explicitly stated that it did not find credible Karatsoupa's testimony that Appellant had pulled a knife on her previously, and it did not consider that testimony in rendering its verdict. **See id.** at 142 (the court's stating, after the Commonwealth noted Karatsoupa's testimony that Appellant "pulled a knife out on her at a previous time," that it "did not find [Karatsoupa] a credible witness in almost every point so I'm not considering the evidence as to whether or not he pulled the knife"). Therefore, Appellant has not demonstrated that the admission of Karatsoupa's prior-bad-acts testimony prejudiced him, and his first ineffectiveness claim fails.

In Appellant's next issue, he avers that counsel acted ineffectively by not presenting evidence that he alleges would have supported his self-defense claim. Initially, we recognize that,

to establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death

or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Hansley*, 24 A.3d 410, 421 (Pa. Super. 2011) (emphasis and citations omitted). Our Supreme Court has clarified that,

[t]he requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, *bona fide* belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Mouzon*, 53 A.3d 738, 752 (Pa. 2012) (cleaned up).

Here, the trial court concluded that Appellant "did act out of an honest, *bona fide* belief that he was in imminent danger. However, [Appellant's] belief was not reasonable based on the facts surrounding the incident." Trial Court Opinion, 2/28/22, at 7. Appellant now insists that had his trial counsel presented certain evidence, the court would have found his belief of imminent danger to be objectively reasonable. First, he contends that counsel should have presented text messages purportedly sent between Karatsoupa, Katherine Skylar, and Anna Kovaleva, wherein Karatsoupa threatened Appellant and stated that she had found people to "kill/take care" of him. Appellant's Brief at 23. Appellant claims that he told his attorney about these messages prior to trial, but counsel failed to obtain them and present them as evidence.

In rejecting this argument, the PCRA court explained:

[Appellant's] claim that trial counsel was ineffective for failing to present threatening text messages that Karatsoupa allegedly sent to Kovaleva and Skylar also fails. [Appellant] has not established that these text messages existed at the time of trial or that they would be admissible if they did exist. Moreover, [Appellant] has not demonstrated that presenting the text messages would have reasonably led to a different outcome at trial. In messages from Skylar attached to the petition, she states that she told trial counsel prior to trial that the text messages were lost because of the time delay. While Skylar claimed that Kovaleva saw the messages sent to Skylar, [Appellant] has not presented any evidence that Karatsoupa sent threatening text messages to Kovaleva or that they were available to be presented at trial.

Even if these messages did exist at the time of trial, it is unlikely that they would have been admitted into evidence, since they would not be relevant to [Appellant's] state of mind on the night in question. In his [Rule] 907 Response, [Appellant] claims that the messages served as corroboration of his testimony about his being fearful. However, [***Appellant] has never alleged that he was aware of the text messages at the time of the incident***. At trial, he did not testify that he was aware of any threatening text messages that Karatsoupa sent to other individuals before the murder. [Appellant] only testified about messages he received from Karatsoupa and from a blocked phone number in the days leading up to the incident. Since [Appellant] was not aware of these messages at the time of the murder, even if they were available[,] they could not be introduced at trial to establish that he believed deadly force was necessary to defend himself.

Further, there is not a reasonable probability that the result of the proceeding would have been different if the messages existed at the time of trial and were admitted, since this [c]ourt heard testimony from [Appellant] about Karatsoupa['s] threatening him prior to the murder and still found him guilty. This [c]ourt also heard testimony, which it accepted as true, that, moments before [Appellant] stabbed the decedent, the decedent approached [Appellant] with his hand under his shirt saying, "You're about to get fucked up" or "you're about to get killed." Evidence of a direct threat made by the decedent to [Appellant] just before the stabbing was therefore considered by this [c]ourt in its judgment. As [Appellant] has failed to establish that these text messages existed at the time of trial, that they were admissible, or that he suffered prejudice due to their failure to be introduced, the claim fails.

PCO at 5-7 (citations omitted; emphasis added).

We agree with the PCRA court. Notably, Appellant never alleged below, and does not claim on appeal, that he was aware of the threatening text messages allegedly sent between Karatsoupa, Skylar, and Kovaleva before he stabbed the decedent. Thus, his claim that "[t]he texts would have been relevant because they served as corroboration of Appellant's testimony about his being fearful" is wholly meritless. Appellant's Brief at 25. Appellant's alleged fear of the decedent could not be corroborated by text messages that he never saw.

Likewise, Appellant's assertion that counsel acted ineffectively by not presenting text messages that Karatsoupa sent **after** the incident is also meritless. Appellant claims that Karatsoupa's message described what had occurred from her perspective and would have "helped establish that the [decedent] had acted aggressively toward … Appellant just seconds before the fight broke out." *Id.* at 27. However, as the PCRA court pointed out, "that information was already presented through other witnesses' testimony." PCO at 7. Additionally, the court "accepted as true, that, moments before [Appellant] stabbed the decedent, the decedent approached [Appellant] with his hand under his shirt saying, 'You're about to get fucked up' or 'you're about to get killed.'" *Id.* at 6. Accordingly, we agree with the PCRA court that evidence of Karatsoupa's text message describing that the decedent acted aggressively toward Appellant would "have been cumulative and would not have a reasonable probability of changing the outcome of the trial." *Id.* at 7

(citing **Commonwealth v. Miller**, 987 A.2d 638, 668 (Pa. 2009) (stating that counsel cannot be found ineffective for failing to introduce evidence that is merely cumulative of evidence already introduced on the record)).

Appellant next contends that trial counsel was ineffective for failing to retain and present a forensic video expert who could have enhanced the raw, video surveillance footage of the incident that was captured by cameras in the area. According to Appellant, the Commonwealth provided the defense with a "compilation video edited by the Commonwealth[,]" but Appellant instead "needed the raw video footage from the Commonwealth…." Appellant's Brief at 33. He insists that enhancing the raw video footage might have shown that the decedent was the initial aggressor and that he possessed a gun. **Id.** at 34. Appellant claims that,

> PCRA counsel consulted with Kyp Stavrou[] from Complete Digital Forensic Solutions. Mr. Stavrou is a certified [Digital and Multimedia Evidence] Forensic Expert. His curriculum vitae is appended hereto.
>
> Mr. Stavrou advised counsel that he could not provide a report that contained opinions made to a reasonable degree of videographic certainty because he needed the raw video footage from the Commonwealth as opposed to the compilation video edited by the Commonwealth.
>
> In order to obtain the raw data to allow PCRA [c]ounsel to have Mr. Stavrou conduct that review, Appellant specifically requested that the PCRA [c]ourt grant the above limited discovery request pursuant to Pennsylvania Rule of Criminal Procedure 902(E); **Strickler v. Greene**, [527 U.S. 263] (1999); **Kyles v. Whitley**, 514 U.S. [419,] 435 [(1995)]….

**Id.** at 33-34. Appellant argues that the PCRA court erred by denying his discovery request, which prevented him from developing his claim that

- 11 -

counsel acted ineffectively by not presenting an expert witness like Mr. Stavrou.

Initially, Appellant first mentioned Mr. Stavrou in his response to the PCRA court's Rule 907 notice. As the court pointed out, he did not "attach[ to his petition] an expert report or a certification from an expert as to what they would testify to or whether the video would be capable of being enhanced." PCO at 8. Additionally,

> [o]ther evidence presented at trial, such as witness testimony and surveillance video, established that both [Appellant] and the decedent went back to the vehicles they arrived in after the initial fight and could have left, but the decedent began to approach [Appellant] again. This [c]ourt noted that, as the decedent began to approach [Appellant] with his hand under his shirt, which [Appellant] believed to be threatening, [Appellant] pulled out a knife, rushed in on the decedent, and stabbed him once. ***There was no evidence presented at trial that the decedent had a gun. Multiple witnesses testified at trial, and none of the witnesses stated that the decedent was armed or that they saw anyone with a firearm that night. [Appellant] himself never testified that he saw the decedent with a gun, and there was no gun recovered from the scene following the incident.*** In his 907 Response, [Appellant] claimed that only the compilation video was provided to the defense; however, the trial exhibit list clearly indicates that the raw footage was also passed. As [Appellant's] claim is merely speculative and he has failed to establish prejudice, the claim lacks merit.

*Id.* (emphasis added).

On appeal, Appellant insists that his ineffectiveness claim is "only 'speculative' because the PCRA [c]ourt did not grant … Appellant's discovery request and order the Commonwealth to provide PCRA counsel with [the]

essential raw footage needed for the expert to 'flesh out' the claim and make it more than speculative." Appellant's Brief at 35. We disagree.

Initially, we are mindful that,

[w]e review the denial of discovery for an abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Crispell*, 193 A.3d 919, 939-40 (Pa. 2018) (cleaned up). Additionally, Pennsylvania Rule of Criminal Procedure 902 states that, "[e]xcept as provided in paragraph (E)(2) [(regarding a first PCRA petition in a death-penalty case)], no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of *exceptional circumstances*." Pa.R.Crim.P. 902(E)(1) (emphasis added).

Here, the PCRA court did not abuse its discretion in concluding that no exceptional circumstances warranted discovery of the raw video footage. First, as the PCRA court observed, the compilation video and witness testimony indicated that the decedent approached Appellant in what Appellant believed was a threatening manner; thus, Appellant's claim that he needed the raw footage to establish this fact is meritless, as that evidence would have been merely cumulative of other evidence presented at trial. Second, there was no evidence indicating that the decedent had a gun. Even Appellant himself did not testify that he saw the decedent with a gun. Therefore, his argument that the raw footage *might* show the decedent with a gun is purely

speculative. Accordingly, Appellant has failed to show that exceptional circumstances existed to warrant discovery during the post-conviction proceedings. Because Appellant also did not attach to his petition any expert report or certification from an expert regarding "what they would testify to or whether the video would be capable of being enhanced[,]" PCO at 8, he has not demonstrated that his counsel acted ineffectively by failing to obtain an expert witness. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (stating that, to prove ineffectiveness for failing to obtain an expert witness, the petitioner "must demonstrate that an expert witness was available who would have offered testimony designed to advance [the petitioner's] cause").

In Appellant's next issue, he argues that his trial counsel was ineffective for failing "to object when the prosecutor misstated the evidence of record when he argued multiple times in opening and closing arguments that Appellant had stabbed [the decedent] with such a force and angle that the knife penetrated <u>both</u> lungs." Appellant's Brief at 39 (emphasis in original). According to Appellant, "the Medical Examiner's Report" showed that "the stab wound was to both <u>lobes</u> of the left lung only. That is entirely distinct from both <u>lungs</u> being stabbed." *Id.* at 41 (emphasis in original). Appellant claims he was prejudiced by his attorney's failure to object because "the prosecutor essentially fabricated damning evidence[,] inferring that the force used by Appellant was much greater than that which would be used for self-defense." *Id.* at 42.

- 14 -

Again, no relief is due. As the PCRA court explained:

The evidence presented at trial clearly established that the knife only penetrated both lobes of the decedent's left lung. The fact that the prosecutor mistakenly stated that the knife penetrated both of the decedent's lungs did not undermine confidence in the outcome of the proceeding. Even if trial counsel had objected and corrected the prosecutor's misstatement, it would not have changed the outcome of the trial. Regardless of whether both of the decedent's lungs or just his left lung were punctured, this [c]ourt concluded [Appellant] stabbed the decedent and the use of deadly force was unreasonable. As trial counsel's failure to object did not result in prejudice, the claim fails.

PCO at 8-9. The record supports the PCRA court's decision. Because Appellant has not demonstrated that the outcome of his trial would have been different had his counsel objected to the prosecutor's misstatements, he has not established that counsel acted ineffectively.

Finally, Appellant contends that the cumulative impact of the errors he asserts herein demonstrates that he was denied a fair trial. Our Supreme Court has explained:

[W]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis.

Although cumulative prejudice from individual claims may be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice, nothing in our precedent relieves an appellant who claims cumulative prejudice from setting forth a **specific, reasoned, and legally and factually supported argument** for the claim. A bald averment of cumulative prejudice does not constitute a claim.

***Commonwealth v. Hutchinson***, 25 A.3d 277, 318–19 (Pa. 2011) (cleaned up; emphasis added).

- 15 -

Instantly, Appellant only cursorily claims that "[t]he cumulative errors asserted herein are not harmless[,] in that they had a substantial and injurious effect or influence in determining the [court's] verdict[,]" and that "[t]he cumulative effect of counsel's ineffective acts and omissions rendered the verdict inherently unreliable, violating Appellant's constitutional right to a fair trial and due process of law."  Appellant's Brief at 47-48.  These non-specific arguments are legally and factually unsupported, and are insufficient to prove cumulative prejudice.  Accordingly, no relief is due on any of Appellant's ineffectiveness claims individually, or collectively.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/20/2025